Ron DAVIES and Dan Mehr, dba
Davies & Mehr Construction,
Plaintiffs and Respondents,

v.

Timothy R. OLSON, William S. Lund,
Wasatch Bank, Utah Valley Bank, and
Household Finance Corporation, Defendants and Appellants.

Ron DAVIES and Dan Mehr, dba
Davies & Mehr Construction,
Plaintiffs and Appellants,

v.

Timothy R. OLSON, William S. Lund,
Wasatch Bank, Utah Valley Bank, and
Household Finance Corporation, Defendants and Respondents.

Nos. 860145–CA, 860146–CA.

Court of Appeals of Utah.

Nov. 24, 1987.

Before GARFF, ORME and BILLINGS, JJ.

BILLINGS, Judge:

Both parties appeal from the trial court's May 17, 1985 judgment against defendant Olson, purporting to award plaintiffs their reasonable costs (plus interest) incurred in constructing four duplexes for defendants. We affirm the trial court's finding that there was no contract, and the court's conclusion that *quantum meruit* was, therefore, the proper theory of recovery. We, however, reverse the finding of no liability on the part of defendant Lund. We remand for findings as to whether he (1) requested plaintiffs to perform work and if so, to what extent, and/or (2) received any benefits as a result of plaintiffs' construction of the duplexes, and an entry of a judgment consistent with those findings and our opinion. We further reverse the trial court's calculation of damages against defendant Olson and remand for a determination of the reasonable value of plaintiffs' services in constructing the duplexes, and an entry of a judgment in that amount against defendant Olson.

### FACTS

The following facts were developed in a bifurcated trial held on five nonconsecutive days over a two-year eight-month period.[1] Plaintiff Davies and defendant Olson orally agreed that Davies would construct four duplexes for Olson. The parties originally agreed that plaintiff Davies would construct the duplexes for "cost plus $6,000 builder's profit per duplex." Based on this oral agreement, plaintiff Davies prepared a cost breakdown and submitted it to Wasatch Bank for acquisition of long-term financing, and to defendant Olson. Subsequently, defendant Olson requested numerous changes and additions to the original specifications for the duplexes.

Soon thereafter, defendants, in an attempt to establish a ceiling price on the

Dallas H. Young, Jr., Jerry L. Reynolds, Provo, for defendants and appellants.

Gary D. Stott, Lynn S. Davies, Salt Lake City, for defendants and respondents.

1. The first trial was held on August 2, 1982 and September 13, 1982. The supplemental hearing was held on April 4, 1985, April 10, 1985, and April 16, 1985. The confusion and inconsistencies in the judgment are largely attributable to the unfortunate interruptions in the trial.

cost of construction at $72,070 per duplex, prepared a contract and submitted it to plaintiffs. In his letter to plaintiffs, defendant Olson stated that the purpose of the proposed contract was "mainly to satisfy [defendant] Lund" as he was concerned about fixing a ceiling price. This contract, however, was never executed.

A settlement statement, dated July 7, 1981 and signed by defendant Lund, fixed the contract sales price at $128,500. This settlement statement was used at the closing with Wasatch Bank. Wasatch Bank provided permanent financing, which was insufficient to cover plaintiffs' construction expenses. Consequently, plaintiffs initiated an action against, among others, defendants Olson and Lund, alleging claims of fraud, breach of contract, and foreclosure of mechanics' liens. (The foreclosure claim was resolved).

After the initial trial on August 2, 1982 and September 13, 1982, the trial court entered judgment on August 4, 1983 against defendants Lund and Olson for $23,741.54[2] plus 12% interest accruing from July 7, 1981. The court found there was no agreement among the parties as to the total price to be paid for the construction of the duplexes. The court, however, based on the initial cost breakdown prepared by plaintiff Davies, found defendants jointly liable for $23,741.54. The court then found that plaintiffs were additionally entitled to recover from defendant Olson the reasonable costs incurred because of defendant Olson's requested changes in the duplex specifications.[3] The court then directed counsel to negotiate and submit a figure as to the reasonable costs plaintiffs incurred because of defendant Olson's requested changes. The parties failed to reach an agreement. Consequently, a supplemental hearing was held on April 4, 1985, April 10, 1985, and April 16, 1985,

focusing on the following issues previously reserved by the trial court:

1. What were the plans and specifications upon which plaintiffs and defendants relied in the cost breakdown?

2. What modifications were subsequently made to those plans and specifications upon defendant Olson's requests?

3. What were the reasonable costs of the requested modifications which were actually made by plaintiffs?

The trial court, in its final judgment of May 17, 1985, found there was no meeting of the minds between the parties "as to plans and specifications which formed the basis of the cost breakdown," and, therefore, that it erred in basing its August 4, 1983 judgment on that document. The court concluded that in order to prevent unjust enrichment of defendant Olson, plaintiffs were entitled to recover their reasonable costs of construction from him. The court, however, was silent as to defendant Lund's liability. The court awarded plaintiffs $51,773.96 plus interest "at the legal rate of interest," accruing from July 7, 1981, the date the settlement statement was executed. The trial court calculated the May 17, 1985 judgment as follows:

| | |
|---|---|
| Reasonable cost of construction | $366,703.96 |
| Less adjustment for water meters | 1,350.00 |
| NET CONSTRUCTION COST | 365,353.96 |
| Less the Amount of the August 4 Judgment[4] | 313,580.00 |
| May 17, 1985 Judgment to Plaintiffs | $51,773.96 |

Both parties appeal from the May 17, 1985 judgment.

## I. SUFFICIENCY OF THE EVIDENCE

▮ On appeal, we are asked to determine whether there is sufficient evidence to support the trial court's finding of no enforceable written or oral contract. The

---

**2.** The court found the cost per duplex to be $78,395. Multiplying that figure by the number of duplexes built (4), and subtracting the construction costs paid by defendants, $289,838.46, yielded a judgment in the amount of $23,741.54.

**3.** The court did not enter judgment against defendant Lund for this additional recovery, find-

ing that defendant Lund merely assisted defendant Olson in acquiring long-term financing.

**4.** The court credited defendant Olson with payment of $78,395 per duplex, multiplied by the number of duplexes built (4), or $313,580. *See* Note 2, *supra.*

trial court's findings of fact will not be set aside unless "clearly erroneous." Utah R.Civ.P. 52(a); *State v. Wright,* 744 P.2d 315 (Utah Ct.App.1987); *State v. Walker,* 743 P.2d 191, 193 (Utah 1987). A review of the record amply supports the trial court's findings (1) that there was no meeting of the minds as to the contract price, an essential term of a construction contract; (2) that there was no meeting of the minds as to which plans and specifications formed the basis of the cost breakdown prepared by plaintiff Davies; and (3) that the parties did not intend the settlement statement to constitute an executory accord.

Testimony at trial conflicted significantly as to the contract price. Plaintiff Davies testified that he and defendant Olson orally agreed that plaintiff Davies would construct the four duplexes for cost plus $6,000 builder's profit per duplex. Defendant Olson, on the other hand, while conceding that cost plus $6,000 was discussed, denied that he agreed to an open-ended deal. Subsequent to the oral conversation between plaintiff Davies and defendant Olson, plaintiff Davies prepared a cost breakdown and submitted it to Wasatch Bank and to defendant Olson. Thereafter, defendant Olson prepared a written contract with a provision that cost was not to exceed $72,070 per duplex, evidently attempting to appease defendant Lund's concern about cost. Defendant Olson presented this proposed contract to plaintiff Davies, claiming Davies said that he would sign it. This contract, however, was never executed.

Given the disparity in the testimony regarding the contract price, the trial court's finding that there was no meeting of the minds as to the contract price is not clearly erroneous.

We also affirm the trial court's finding that the settlement statement used for closing on the financing did not constitute an "executory accord," because there was no meeting of the minds. *See Golden Key Realty, Inc. v. Mantas,* 699 P.2d 730, 733 (Utah 1985); *Sugarhouse Finance Co. v. Anderson,* 610 P.2d 1369, 1372 (Utah 1980). The settlement statement lists the contract price as $128,500. At trial, conflicting testimony was introduced regarding whether defendant Olson ever agreed to this figure. Defendant Olson testified that he *never* agreed to a contract price in excess of $116,000 per unit. Similarly, defendant Lund's position is that he signed the settlement statement merely to assist defendant Olson to acquire long-term financing, but that the settlement statement did not constitute an acknowledgment of specific *amounts* owed to plaintiffs. After reviewing the record, we do not believe the trial court's finding that the parties did not intend the settlement statement to constitute an executory accord is clearly erroneous.

## II. DUE PROCESS

Defendants contend that they were denied due process of law because the trial court's May 17, 1985 judgment was based on *quantum meruit,* a theory which was not pled, nor reserved by the trial court. We disagree.

A hearing must be prefaced by timely notice which adequately informs the parties of the specific issues they must be prepared to meet. *Nelson v. Jacobsen,* 669 P.2d 1207, 1212 (Utah 1983). Issues not expressly raised in the pleadings, however, may be tried by the implied consent of the parties. *General Ins. Co. v. Carnicero Dynasty Corp.,* 545 P.2d 502, 506 (Utah 1976). Implied consent may be found where evidence is introduced without objection. *Id.* Moreover, proof of a quasi-contract under an allegation of a breach of an express contract does not violate due process, absent surprise or prejudice. *North Tillamook County Sanitary Authority v. Great American Ins. Co.,* 46 Or.App. 173, 611 P.2d 319, 321 (1980).

*Quantum meruit* was, at least inferentially, an issue at the supplemental hearing. The supplemental hearing focused on the plans and specifications underlying the cost breakdown and the additional costs plaintiffs incurred because of defendant Olson's requested changes in the duplex specifications. There is no showing that defendants were surprised or prevent-

ed from presenting all evidence pertaining to the reasonable costs of construction or the benefits defendants received, nor that they were prejudiced by the trial judge relying on the theory of *quantum meruit*. Furthermore, any possible prejudice defendants may have suffered is cured by our remand for a new trial on the issue of damages.

## III. DEFENDANT LUND'S LIABILITY

The trial court, in its final May 17, 1985 judgment, without any supportive findings or explanation, relieved defendant Lund of liability. The court did this although it had previously held him liable for the $23,-741.54 judgment. We are unable to ascertain whether the court found that defendant Lund requested plaintiffs to perform services, and if so, to what extent, or whether any benefit was conferred upon defendant Lund by plaintiffs' construction of the duplexes. If defendant Lund requested services and received a benefit which would be unjustly retained, he is liable under *quantum meruit*.[5] Consequently, we remand to the trial court for findings on this issue and an entry of judgment consistent with our opinion.

## IV. MEASURE OF DAMAGES

Despite our approval of the trial court's decision to base recovery on *quantum meruit*, we, nonetheless, reverse the May 17, 1985 judgment because we find that it is legally and factually inconsistent.

In its August 4, 1983 judgment, the trial court based plaintiffs' damages on the cost breakdown and held both defendants liable.

■ In its May 17, 1985 judgment, the court determined that there was no meeting of the minds as to the plans and specifications underlying the cost breakdown, reversing its prior conclusion. The court, therefore, premised its May 17, 1985 judgment strictly on *quantum meruit*. Nonetheless, in calculating the measure of dam-

ages assessed against defendant Olson, the court gave defendant Olson credit for the August 4, 1983 judgment—a judgment based on a theory that the court had rejected. Further, the court did not indicate whether defendant Lund was still bound by the earlier judgment entered against him. By giving defendant Olson credit for the August 4, 1983 judgment, an earlier judgment which the May 17, 1985 judgment, on its face, seems to supercede, the trial court, in effect, reduced the amount of plaintiffs' recovery. The trial court did not indicate whether it intended the May 17, 1985 judgment to be in addition to the August 4, 1983 judgment, or instead of it.[6] In light of these observations, we find that the May 17, 1985 judgment is internally inconsistent and, if enforced, patently unfair to plaintiffs under any interpretation of the evidence. Therefore, we reverse and remand for a determination of damages under *quantum meruit*.

■ Because we remand for further proceedings, we attempt to provide some guidance to the trial court. See *Utah Farm Production Credit Ass'n v. Watts*, 737 P.2d 154, 158 (Utah 1987). *Quantum meruit* is an action initiated by a plaintiff to recover payment for labor performed in a variety of circumstances in which that plaintiff, for some reason, would not be able to sue on an express contract. Recovery under *quantum meruit* presupposes that no enforceable written or oral contract exists. See *Blue Ridge Sewer Improvement Dist. v. Lowry & Assos., Inc.*, 149 Ariz. 373, 718 P.2d 1026 (Ct.App.1986). Confusion surrounds the use and application of *quantum meruit, see, e.g., Interform Co. v. Mitchell*, 575 F.2d 1270 (9th Cir.1978) (attempting to apply Idaho law); *Hartwell Corp. v. Smith*, 107 Idaho 134, 686 P.2d 79 (Ct.App.1984), because courts have used the terms *quantum meruit*, contract implied in fact, contract implied in law, quasi-contract, unjust enrichment, and/or restitution without analytical preci-

---

5. Of course, the court, on remand, could find other theories of recovery against defendant Lund based upon the evidence, including partnership or joint venture.

6. The earlier judgment was not made final pursuant to Utah R.Civ.P. 54(b) and therefore would seem to be legally merged into or superceded by the May 17 final judgment.

sion. *See, e.g., Euramca Ecosys v. Roediger Pittsburgh, Inc.*, 581 F.Supp. 415, 422 (E.D.Ill.1984) (discussing quasi-contract claim in *quantum meruit* litigation); *Idaho Lumber, Inc. v. Buck*, 109 Idaho 737, 710 P.2d 647, 655–57 (Ct.App.1985); *Sharp v. Laubersheimer*, 347 N.W.2d 268, 270 (Minn.1984); *Ellis–Jones, Inc. v. Western Waterproofing Co.*, 66 N.C.App. 641, 646–47, 312 S.E.2d 215, 218 (1984).

*Quantum meruit* has two distinct branches. Both branches, however, are rooted in "justice," *see Lakeshore Fin. Corp. v. Comstock*, 587 F.Supp. 426, 429 (W.D.Mich.1984), to prevent the defendant's enrichment at the plaintiff's expense. *See Hazelwood Water Dist. v. First Union Management, Inc.*, 78 Or.App. 226, 715 P.2d 498 (1986).

▪ Contract implied in law, also known as quasi-contract or unjust enrichment, is one branch of *quantum meruit*. A quasi-contract is not a contract at all, but rather is a legal action in restitution. *See* 1 A. Corbin, *Corbin on Contracts* § 19, at 44, 46 (1963). The elements of a quasi-contract, or a contract implied in law, are: (1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it. *See Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984) (using the term "unjust enrichment"). The measure of recovery under quasi-contract, or contract implied in law, is the value of the benefit conferred on the defendant (the defendant's gain) and not the detriment incurred by the plaintiff, *see First Inv. Co. v. Andersen*, 621 P.2d 683, 687 (Utah 1980), or necessarily the reasonable value of the plaintiff's services.

▪ A contract implied in fact is the second branch of *quantum meruit*. A contract implied in fact is a "contract" established by conduct. *See* Restatement (Second) of Contracts § 5 comment a (1981). The elements of a contract implied in fact are: (1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the de-

fendant knew or should have known that the plaintiff expected compensation. *See Kintz v. Read*, 28 Wash.App. 731, 626 P.2d 52, 55 (1981); *see also* Restatement (Second) of Contracts § 5 comment a (1981) (providing that terms of promise or agreement are those expressed in language of parties or implied in fact from other conduct); 1 S. Williston, *Williston on Contracts* § 3, at 8–10 (1957) (defining implied in fact contracts as obligations arising from mutual agreement and intent to promise where parties do not express agreement and promise in words); 1 A. Corbin, *Corbin on Contracts* § 18 (1963) (noting that implied contracts impose contractive duty by reason of promissory expression and are no different than express contracts, although different in mode of expressing assent). "Technically, recovery in contract implied in fact is the amount the parties intended as the contract price. If that amount is unexpressed, courts will infer that the parties intended the amount to be the reasonable market value of the plaintiff's services." Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Am.U.L. Rev. 547, 556 (1986).

In the case before us, the trial court correctly found that there was no express contract, and thus that plaintiffs' recovery must be based on *quantum meruit*. The court further held that plaintiffs should recover their reasonable costs of constructing the duplexes. The court correctly found a contract implied in fact. It is undisputed that defendant Olson orally requested plaintiff Davies to construct the duplexes, that plaintiffs expected Olson to compensate them for those services, and that Olson knew that plaintiffs expected compensation. Thus, we remand as to defendant Olson for a determination of the reasonable value of plaintiffs' services in constructing the duplexes, and an entry of judgment against him for that amount.

We are unable to determine what the court found as to defendant Lund. Thus we remand as to defendant Lund for findings on whether he requested plaintiffs to perform work, and if so, to what extent, or whether he received any unjust benefits as

a result of plaintiffs' efforts. These findings will support the court's conclusion as to whether defendant Lund is liable to plaintiffs under *quantum meruit*—a contract implied in law, or *quantum meruit*—a contract implied in fact, or neither. As is explained more fully *supra*, the measure of damages may differ depending on the theory adopted.

## V. INTEREST

In awarding damages, the applicable legal rate of interest must also be determined. The 1981 amendment to section 15–1–1 increased the legal rate of interest from 6 percent to 10 percent. Utah Code Ann. § 15–1–1 (1986).

The statutory legal rate of interest is applied from the date payment is due to the judgment date. *See Lignell v. Berg,* 593 P.2d 800, 809 (Utah 1979).

The trial court found July 7, 1981, the date defendant Lund signed the settlement statement, as the due date, as that was the date the benefit was conferred. It was also on this date that defendants acknowledged an obligation to pay plaintiffs for their services in constructing the duplexes. We find that this determination is supported by substantial evidence and therefore will not disturb it on appeal. *See id.* at 810. Based on this factual determination, we find the appropriate rate of interest is 10 percent.

The May 17, 1985 judgment is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion. Each party to bear its own costs.

GARFF, and ORME, JJ., concur.