**PROMAX DEVELOPMENT COR-PORATION, Plaintiff, Appellant, and Cross-appellee,**

v.

**Matt MATTSON and Sherie Mattson, Defendants, Appellees, and Cross-appellants.**

No. 960684–CA.

Court of Appeals of Utah.

July 25, 1997.

---

Rex E. Madsen, Korey D. Rasmussen, and David L. Pinkston, Snow, Christensen & Martineau, Salt Lake City, for Appellant.

Steven C. Russell, G. Brent Smith, and Curt W. Morris, Affordable Legal Advocates, Salt Lake City, for Appellees.

Before WILKINS, Associate P.J., and GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant ProMax Development Corp. (ProMax) challenges the trial court's judgment in favor of appellees Matt and Sherie Mattson, arguing that (1) the evidence presented at the bench trial does not support the trial court's finding of intentional interference with contractual relations; (2) the trial court erred in not considering newly discovered evidence, which indicates that ProMax should not be held liable for intentional interference with contractual relations; and (3) even if ProMax is liable, the evidence does not support the amount of damages awarded. The Mattsons cross appeal, claiming (1) the trial court awarded them insufficient damages; and (2) the trial court erred in refusing to award punitive damages and attorney fees. We affirm for the most part, but reverse and remand in part for further proceedings regarding damages.

## BACKGROUND[1]

The Mattsons contracted with ProMax, through ProMax's employee Phil Bates, to build a home. At trial, ProMax claimed the contract was a cost-plus arrangement in which the Mattsons would pay the cost of building the home plus a $10,000 builder's fee. The Mattsons claimed, however, that the contract was a fixed-price arrangement in which they would pay a flat price of $219,200—$190,200 for the home, plus $29,000 for one-half the cost of the lot. A number of witnesses testified on this issue, including Mr. Mattson, who testified it was a fixed-price contract, and Bates, who testified it was a cost-plus contract. The trial court accepted the Mattsons' position and held that the contract was a fixed-price arrangement for $219,200. In making this finding, the trial court noted that the evidence presented by ProMax was "too inconsistent and contradictory to be persuasive."

Construction costs exceeded the $190,200 designated as the cost for building the home,

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Lake Philgas Serv. v. Valley Bank & Trust Co.*, 845 P.2d 951, 953 n. 1 (Utah.Ct.App.1993). However, we "present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *State v. Winward*, 909 P.2d 909, 910 (Utah.Ct.App. 1995).

resulting in significant cost overruns. The Mattsons were forced to pay the overruns from their own funds instead of through their construction financing arrangement. ProMax claimed that the overruns were due to the Mattsons making changes in the original plans for the home. The trial court found, however, that although the Mattsons were involved in the construction process, they were not made aware of the cost overruns until construction was complete. In this respect, the trial court noted that ProMax had produced no written change orders. The trial court also found that the Mattsons thought they were within the original budget until the home was completed, and that at all times, the Mattsons requested a written contract detailing the specifics of the parties' agreement.[2]

Both sides produced evidence regarding the home's fair market value at the time of completion. Culley Davis, ProMax's owner, testified that the home was worth approximately twice the amount of the $190,200 mortgage, or approximately $380,000. Bates testified that he listed the home's value on certain insurance documents as $330,000. Finally, Mr. Mattson testified that, in his estimation, the home was worth $395,000. The trial court found that the home's fair market value at the time of completion was $390,000.

Mr. Mattson testified that (1) he attempted to sell the home and was able to find a buyer, Curtis Johnsen; (2) Johnsen first offered $565,000 for the home, but then reduced the offer to $560,000; and (3) he accepted Johnsen's offer on August 28, 1993. To corroborate this testimony, the Mattsons offered an earnest money agreement (the Earnest Money Agreement) between them and Johnsen. Mr. Mattson testified that he signed the Earnest Money Agreement. The trial court accepted Mr. Mattson's testimony as true, finding that the Mattsons and Johnsen entered into a contract to sell the home for $560,000.

When advised of the proposed sale, Bates insisted that he was entitled to act as selling agent and therefore to collect a selling agent's fee for the sale. Mr. Mattson refused, and in response, Bates threatened to "kill the deal." Accordingly, Bates encouraged several material suppliers to file mechanics' liens on the home. Mr. Mattson testified, and the trial court accepted as true, that Johnsen backed out of the deal because of the liens.

The trial court concluded that ProMax had breached the original cost-plus contract by failing to inform the Mattsons of the cost overruns. However, the trial court found that the parties had "received what they paid for" in this respect and that neither party was entitled to damages relating to the cost overruns.

The trial court also found that ProMax breached its warranty duties by performing defective work and that the Mattsons were forced to pay the costs of remedying the defective work. The trial court awarded the Mattsons $23,000 for these damages.

In addition, the trial court found that ProMax, through its agent Bates, had "maliciously and with intent to harm" interfered with the Mattsons' contractual relations by thwarting the Mattsons' deal to sell their home to Johnsen. As damages for this tort, the trial court awarded the Mattsons $170,000; the trial court calculated this figure by subtracting the home's fair market value, $390,000, from the price agreed to in the contract for sale, $560,000.

Finally, the trial court concluded that insufficient evidence had been presented to award punitive damages.

The trial court issued its oral findings of fact and conclusions of law from the bench on March 18, 1996. On April 2, 1996, ProMax's trial counsel withdrew from the case. On April 4, 1996, a written judgment, reflecting the detailed oral findings, was entered (the April 4 judgment). On April 10, 1996, ProMax's new counsel entered their appearance.

On May 8, 1996, ProMax filed a Motion to Vacate Judgment, pursuant to Rule 60(b) of the Utah Rules of Civil Procedure. ProMax argued that the April 4 judgment drafted by

---

**2.** At trial, other home buyers testified that ProMax had contracted to build houses for them for a set price, then had demanded more money for cost overruns. Thus, the trial court found that ProMax had engaged in a type of "bait and switch" operation.

the Mattsons' counsel (1) was not provided to ProMax in the form of proposed findings, in violation of Rule 4–504(2) of the Utah Code of Judicial Administration (providing that proposed judgments must be furnished to opposing party); (2) was entered two days after ProMax's trial counsel withdrew from the case, in violation of Rule 4–506(3) of the Utah Code of Judicial Administration (providing that action in a case cease for twenty days after party whose counsel has withdrawn is notified of obligation to retain new counsel); and (3) did not comport with the trial court's March 5 bench ruling. On May 29, 1996, the trial court granted ProMax's motion to vacate the April 4 judgment, granting ProMax ten days to object to the findings.

On June 10, 1996, ProMax filed a Rule 59(a) motion for partial new trial based on new evidence. ProMax offered new evidence in the form of affidavits, including affidavits from Johnsen and his wife and from two real estate agents involved with the failed sale of the Mattsons' home to Johnsen. None of these people testified at trial, and ProMax's trial counsel had apparently not deposed or otherwise questioned them prior to trial. These affidavits refuted Mr. Mattson's testimony that the sale failed as a result of the mechanics' liens. The Johnsens' affidavits indicated that (1) the Mattsons told the Johnsens they no longer wished to sell the house *before* they allegedly accepted Johnsen's offer to buy; (2) the Johnsens were unable to raise the money to buy the house; and (3) the mechanics' liens played no part in the Johnsens' decision not to buy the house. The sales agents' affidavits corroborated this information.

In addition, ProMax offered affidavits from witnesses who testified at trial, which allegedly "clarified" testimony given at trial. According to ProMax, these affidavits demonstrated that cost-plus contracts are common and that the arrangement between ProMax and the Mattsons was a cost-plus contract. Finally, ProMax noted that the trial court's first judgment stated that the cost overruns totaled $170,000, but that the only evidence presented at trial was that they totaled $140,-000. On July 3, 1996, the trial court denied ProMax's motion for a partial new trial, but ordered that the amount listed as the total of the cost overruns be reduced from $170,000 to $140,000.

On July 29, 1996, the trial court entered an Amended Judgment, which reflected its disposition of the ProMax motion. On August 8, 1996, ProMax filed a Rule 60(b) motion to vacate judgment on the grounds that the Earnest Money Agreement was invalid because (1) it violated the statute of frauds and (2) the offer in the Earnest Money Agreement expired under its own terms without being accepted and before Bates's alleged interference with the transaction. On September 5, 1996, the trial court denied ProMax's Rule 60(b) motion. This appeal followed.

## ISSUES

We address the following issues: (1) has ProMax properly preserved its statute of frauds defense; (2) did the trial court err by not considering new evidence offered by ProMax after trial; (3) did the trial court erroneously rule that Bates wrongfully caused the mechanics' liens to be filed, so as to constitute tortious interference with the Mattsons' contractual relations; (4) does the evidence support the trial court's factual findings and legal conclusions; (5) did the trial court err by not including the cost overruns in calculating the Mattsons' damages; and (6) did the trial court err by failing to award punitive damages after a judgment against ProMax for tortious interference with a contract?

## ANALYSIS

### A. Statute of Frauds

■ ProMax claims that the contract to sell the Mattsons' home violated the statute of frauds because, as presented at trial, the Earnest Money Agreement was incomplete. The statute of frauds is an affirmative defense which must be pleaded or it is waived. *See* Utah R. Civ. P. 8(c); *Phillips v. JCM Dev. Corp.*, 666 P.2d 876, 884 (Utah 1983). In this case, ProMax did not plead the statute of frauds defense, but maintains it is excused from this deficiency because the Mattsons did not produce the Earnest Money

Agreement during discovery. ProMax thus insists it could not have known that the written agreement was incomplete.

However, irrespective of whether the Earnest Money Agreement was produced during discovery, ProMax could have pleaded the statute of frauds if it legitimately intended to contest the contract's validity on that basis. Indeed, if the Earnest Money Agreement was not produced, as ProMax contends, ProMax would certainly have been on clear notice that a written agreement for the sale of the home might not even exist. As such, ProMax's argument that it should now be excused from the pleading requirement fails.

Because ProMax waived the statute of frauds defense to the existence of the contract between the Mattsons and Johnsen, the trial court did not err in declining to consider the defense in ProMax's post-trial motions.

### B. Newly Discovered Evidence

■ ProMax claims that the trial court abused its discretion in failing to reopen the case after trial to consider newly discovered evidence. As a general matter, the trial court has broad discretion over whether to grant relief from judgment based on newly discovered evidence. *See, e.g., Barson v. E.R. Squibb & Sons, Inc.,* 682 P.2d 832, 841 (Utah 1984); *Uptown Appliance & Radio Co. v. Flint,* 122 Utah 298, 249 P.2d 826, 828 (1952).

■ To succeed on such a motion, a party must establish: (1) the existence of newly discovered evidence which is material and competent; (2) that by due diligence the evidence could not have been discovered and produced before trial; and (3) that the evidence is not merely cumulative or incidental, but is substantial enough that with the evidence there is a reasonable likelihood of a different result. *See, e.g., Barson,* 682 P.2d at 841; *cf.* Utah R. Civ. P. 59(a)(4) (stating as ground for relief from judgment "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial.").

■ Granting a new trial based on newly discovered evidence in only limited circum-stances serves the judicial policy of finality by encouraging parties to fully investigate and present their cases at the appropriate time—during pretrial discovery and at trial. *Cf. Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 969 (Utah.Ct.App.1989) (noting goal of finality in discussing general rule against successive post-trial motions). Accordingly, it is essential that parties seeking a new trial on the basis of newly discovered evidence meet the due diligence component of the rule, "[n]o matter how material or beneficial the [evidence would be] on a new trial." *Shields v. Ekman,* 67 Utah 474, 248 P. 122, 125 (1926) (quotation marks & citation omitted).

■ ProMax now offers evidence discovered after trial which is, in fact, relevant to the judgment in this case. Specifically, ProMax offers the affidavits of the Johnsens and the real estate agents involved with the failed sale of the Mattsons' home. These affidavits cast doubt on Mr. Mattson's testimony, which, for the most part, formed the basis for the trial court's findings and judgment. However, ProMax offers only two reasons for not having discovered this evidence earlier and presented it at trial: (1) that ProMax was not involved in the sale between the Mattsons and Johnsen and hence could not be expected to discover evidence regarding the sale; and (2) that ProMax's prior counsel felt that pursuing this avenue of investigation would be cost-prohibitive.

These reasons simply do not meet the due diligence requirement. The Mattsons' claim that ProMax tortiously interfered with their contractual relations hinges on the contract and on the cause of the contract's failure. As such, questions concerning the formation and failure of the contract were key elements. If ProMax legitimately disputed the interference with contract claim, Rule 59(a)(4)'s due diligence standard would contemplate—at the very least—that ProMax have investigated the critical events by obtaining information from Johnsen, the other party to the alleged contract. *Cf. Powers v. Gene's Bldg. Materials, Inc.,* 567 P.2d 174, 176 (Utah 1977) (affirming trial court's denial of new trial on basis of new evidence, noting that "the evidentiary matters termed as new were

reasonable and proper subjects of discovery and could have been obtained by the exercise of ordinary diligence.").

Similarly, the due diligence requirement is not satisfied when a significant element of the case is ignored based on the cost of investigation. This is particularly true where, as in this case, there is no indication that discovery of the new evidence would have been especially costly or more costly before trial than after. *Cf. In re Adoption of McKinstray v. McKinstray*, 628 P.2d 1286, 1287 (Utah 1981) ("[W]hen it appears that the degree of activity or inquiry which led to the discovery of a witness or evidence after trial would have produced the same evidence had it been exercised prior thereto, due diligence has not been exercised."). Therefore, the trial court did not abuse its discretion in refusing to consider the Johnsens' and the real estate agents' affidavits.[3]

### C. Improper Purposes

ProMax argues the trial court erred in determining that it improperly caused the mechanics' liens to be filed. ProMax claims the liens were filed properly under the applicable lien statute. The Mattsons do not dispute that the liens were filed according to statute, but instead argue that ProMax acted for improper purposes.

■ A party may be liable for interference with contractual relations if its interference was achieved either by "improper means" or for an "improper purpose." *See, e.g., Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982); *accord Sampson v. Richins*, 770 P.2d 998, 1003 (Utah.Ct.App. 1989). The improper purpose alternative of recovery "is established by a showing that the actor's predominant purpose was to in-

jure [the complaining party]." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991); *accord Leigh Furniture*, 657 P.2d at 307; *Sampson*, 770 P.2d at 1003.

In *Pratt v. Prodata, Inc.*, 885 P.2d 786 (Utah 1994) (plurality opinion), the Utah Supreme Court upheld a jury award based on the defendant's having interfered with the plaintiff's economic relations for improper purposes. In *Pratt*, the defendant employer and plaintiff employee disassociated themselves from each other on bad terms. The defendant then used its influence with the plaintiff's new employer to have plaintiff fired. The defendant claimed that the plaintiff had violated a noncompetition clause of the employment contract between them. After the parties discussed the matter, the defendant offered to "clear things up" with the new employer if the plaintiff paid money to the defendant on the alleged contract claim. In taking these actions, the defendant made no misrepresentations and did nothing illegal. Thus, the damage award for the plaintiff, based on the defendant's interference with the plaintiff's economic relations, rested solely on the jury's finding that the defendant acted with an improper purpose.

In upholding the jury's verdict, Associate Chief Justice Stewart, joined by Justice Durham, noted,

> Defendants' action in harming [plaintiff] was entirely gratuitous. [Defendant] could have sued [plaintiff] for violation of the noncompetition covenant if it indeed had thought that [plaintiff] had violated his contract and that [defendant] had suffered some damage giving rise to a valid cause of action. [Defendant], for whatever reasons, did not do that. Instead, it undertook to harm [plaintiff] by virtue of a certain kind

---

**3.** In its post-trial motions and throughout its brief before this court, ProMax offers to "clarify" certain trial testimony by citing post-trial affidavit testimony of certain trial witnesses whom ProMax claims the trial judge "misunderstood." ProMax insists that the affidavits clarify testimony regarding the type of construction contract that the Mattsons and ProMax entered into.

By offering these affidavits, ProMax essentially requested that the trial court consider new evidence because the affidavits contain, to a certain extent, new testimony. As such, whether the

trial court should have considered these affidavits is subject to the rules regarding the consideration of newly discovered evidence. ProMax fails, however, to suggest why, with due diligence, this testimony could not have been offered and presented in a cogent manner at trial. Therefore, ProMax has again failed to meet the due diligence requirement for admission of newly discovered evidence. The trial court, therefore, did not abuse its discretion in refusing to consider these affidavits, and we decline to consider them on appeal.

of personal leverage that it apparently had with [plaintiff's new employer] by inducing [the employer] to fire [plaintiff]. Infliction of gratuitous harm of that sort ought not to be acceptable under the law.

*Id.* at 791 (Stewart, A.C.J., & Durham J., concurring); *cf. Leigh Furniture,* 657 P.2d at 307 (noting commentator's description of malicious motive as " 'spite and a desire to do harm ... for its own sake.' " (citation omitted)); *Sampson,* 770 P.2d at 1003 (same).

■ Similarly, in this case, it is undisputed that ProMax encouraged the suppliers to file mechanics' liens against the Mattsons' home after the Mattsons refused to allow ProMax to act as the selling agent. As with the defendant in *Pratt,* ProMax could have sued to enforce whatever contract it felt existed between itself and the Mattsons. Instead, ProMax used its leverage and connections with the material suppliers to harm the Mattsons, just as did the defendant in *Pratt.* Thus, there was sufficient evidence presented at trial from which the trial court could have concluded that ProMax's actions were gratuitous and predominantly designed to harm the Mattsons, for harm's sake. *Cf. Pratt,* 885 P.2d at 789 (noting that "on the facts before it, the jury could have found something akin to extortion in defendants' motivation."). Accordingly, the trial court's ruling that Pro-Max acted with improper purposes was not error.

### D. Sufficiency of the Evidence

■ ProMax argues that a number of the trial court's factual findings and conclusions of law were not supported by the evidence. To frame our analysis, we first note several relevant and well-settled principles of appellate review. First, we review the trial court's legal conclusions for correctness, granting no particular deference to the trial court's conclusions. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

■ On the other hand, we review the trial court's findings of fact for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made. *See State v. Goodman,* 763 P.2d 786, 786 (Utah 1988); *Cummings v.*

*Cummings,* 821 P.2d 472, 476 (Utah.Ct.App. 1991). To succeed in its challenge to findings of fact, ProMax may not simply reargue its position based on selective excerpts of evidence presented to the trial court. *See De-Bry v. Cascade Enters.,* 879 P.2d 1353, 1360 (Utah 1994) (rejecting sufficiency of evidence challenge where appellant "essentially reargue[d] the evidence as if [the] appeal were a trial de novo."); *Oneida/SLIC v. Oneida Cold Storage & Warehouse, Inc.,* 872 P.2d 1051, 1053 (Utah.Ct.App.1994) (noting appellant's argument was "nothing more than an attempt to reargue the case before this court—a tactic that we reject."). Instead, ProMax must "first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.,* 899 P.2d 766, 773 (Utah 1995); *accord Oneida/SLIC,* 872 P.2d at 1052–53.

■ In addition, because "it is the wrongdoer, rather than the injured party, who should bear the burden of some uncertainty in the amount of damages, ... the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages." *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 334 (Utah 1985). Rather, to prove the amount of damages, the evidence must "rise[] above speculation and provide[] a reasonable, even though not necessarily precise, estimate of damages." *Id.*

Finally, it is the trial court's role to assess witness credibility, given its advantaged position to observe testimony first hand, and normally, we will not second guess the trial court's findings in this regard. *See* Utah R. Civ. P. 52(a) ("Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses."); *Pena,* 869 P.2d at 936.

#### i. Preservation Before the Trial Court

■ The Mattsons argue that ProMax failed to properly raise the sufficiency of the evidence issues before the trial court. Under

Rule 52(b) of the Utah Rules of Civil Procedure, "[u]pon motion of a party . . . the court may amend its findings or make additional findings and may amend the judgment accordingly." *See also* Utah R. Civ. P. 59(a)(6) (listing insufficiency of evidence as grounds for new trial). Moreover, Rule 52 indicates that challenges to the sufficiency of the evidence need not be preserved in the trial court when an action is tried without a jury:

> When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made either a motion to amend them, a motion for judgment, or a motion for a new trial.

Utah R. Civ. P. 52(b). As such, ProMax need not have preserved its sufficiency claims by specifically raising the issue before the trial court. *Cf. Dugan v. Jones*, 724 P.2d 955, 956–57 (Utah 1986) (noting that preservation does not apply to sufficiency attacks on findings of fact in equity proceedings tried before judge).

### ii. Harmless Errors

■ Rule 61 of the Utah Rules of Civil Procedure reflects another established rule of appellate review:

> No error in either the admission or the exclusion of evidence, and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Utah R. Civ. P. 61. Accordingly, to succeed on appeal, an appellant must show " 'not only that an error occurred, but that it was substantial and prejudicial in that the appellant was deprived in some manner of a full and fair consideration of the disputed issues.' " *Onyeabor v. Pro Roofing, Inc.*, 787 P.2d 525, 529 (Utah.Ct.App.1990) (quoting *Ashton v. Ashton*, 733 P.2d 147, 154 (Utah 1987)). Notwithstanding this elementary principle, Pro-Max makes several claims of error without explaining how the alleged errors affect the outcome in this case.

For example, ProMax notes that in its original order, the trial court stated that the Mattsons paid approximately $170,000 in cost overruns, even though Mr. Mattson testified that the cost overruns were $140,000. However, after ProMax called this discrepancy to the trial court's attention, the trial court amended the initial finding to reflect that the cost overruns were only $140,000. Hence, any error in this regard was corrected.[4] ProMax fails to explain how this corrected error could be prejudicial or otherwise serve as grounds to reverse or amend the instant judgment.[5]

ProMax also finds fault with the trial court's reference to the lack of evidence that the Mattsons requested changes in the construction plan in writing. ProMax maintains that change orders need not be written. It is clear, however, that the trial court mentioned the lack of written change orders merely to buttress its finding that the Mattsons were unaware of the cost overruns. As ProMax does not challenge that finding, we again fail to see how any error in this regard could have prejudiced ProMax.

---

4. ProMax also asserts that the trial court erroneously found that the parties stipulated that the cost overruns amounted to $140,000. However, Mr. Mattson testified at trial that the overruns were approximately $140,000, and ProMax does not cite to any portion of the trial record which indicates that it refuted this figure. Thus, the evidence supported the $140,000 figure, irrespective of whether the parties stipulated to it. *Cf. Atkin Wright & Miles*, 709 P.2d at 336 ("The amount of damages may be based upon approximations, if the fact of damage is established, and the approximations are based upon reasonable assumptions or projections.").

5. ProMax suggests that the initial error demonstrates the trial court's confusion about the facts of this case. We believe, however, the fact that the trial court corrected the error demonstrates, if anything, the trial court's careful consideration of the alleged claims of error and its amenability to making corrections where appropriate.

iii. Existence of Contract

 ProMax argues that the evidence presented at trial does not support the existence of a contract between the Mattsons and Johnsen to sell the home. Whether a contract exists is a mixed question of law and fact. *See Cal Wadsworth Const. v. City of St. George*, 865 P.2d 1373, 1375 (Utah.Ct.App. 1993), *aff'd*, 898 P.2d 1372 (Utah 1995). In attempting to marshal the evidence underlying the trial court's factual conclusions, Pro-Max refers to the evidence which supports the trial court's finding that a contract existed, namely, the Earnest Money Agreement and Mr. Mattson's testimony regarding the negotiations between himself and Johnsen. However, ProMax fails to demonstrate how this evidence does not support a conclusion that a contract existed. Instead, ProMax attacks the evidence as incomplete and not credible.

 At trial, Mr. Mattson testified about his negotiations and agreement to sell the house to Johnsen, who was, according to Mr. Mattson, ready, able, and willing to buy. Mr. Mattson testified that Johnsen made an offer and that he accepted the offer. Additionally, Mr. Mattson testified that a written contract, i.e., the Earnest Money Agreement, was produced, and that he signed it. If true, this testimony is legally sufficient to establish a contract for sale. ProMax did not contest any of this testimony at trial, and the trial court chose to believe Mr. Mattson's testimony. Despite ProMax's efforts to have this court reassess that credibility determination, we must accept the trial court's judgment in this respect because we find no clear error.

ProMax's challenge to the finding of a contract between the Mattsons and Johnsen centers primarily on confusion regarding the state of the record as it concerns the Earnest Money Agreement.[6] We emphasize, however, that this court does not sit as a fact finder. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991) (noting that appellate court "does not sit to retry the facts."); *Oneida/SLIC*, 872 P.2d at 1053 (noting "appellate courts 'do not sit to retry cases submitted on disputed facts.'" (citation omitted)). Indeed, the nature of an appellate court makes it particularly ill-suited to resolve factual matters. *See Pena*, 869 P.2d at 937–39. Thus, the appropriate forum for raising and sifting through the parties' disputes regarding the Earnest Money Agreement would have been at trial, ideally after diligent pretrial discovery and investigation.

We note, moreover, that the various issues surrounding the Earnest Money Agreement were first raised after trial. Indeed, ProMax's trial counsel agreed to have the Earnest Money Agreement offered by the Mattsons admitted at trial. We, therefore, will not consider the myriad of factual allegations the parties now raise. Instead, we affirm the trial court's ruling regarding the contract because it comports with the evidence as presented at trial.

iv. Fair Market Value of the Mattsons' Home

 ProMax argues that the trial court erred in valuing the Mattsons' home at $390,000. Specifically, ProMax argues that the only evidence to support the $390,000 figure was Mr. Mattson's own unqualified opinion. However, testimony from two of ProMax's own witnesses indicated that the Mattsons' home was worth approximately $390,000. While this testimony was not precise, it was sufficient, coupled with Mr. Mattson's testimony, to support the trial court's figure.

---

**6.** Much of the confusion stems from the fact that the Earnest Money Agreement produced at trial was evidently incomplete. This is apparent on the face of the agreement, which references addenda that are not present. Thus, the document provided at trial lists Johnsen's offer as $565,000, while Mr. Mattson testified that Johnsen "counter-offered" for $560,000. Further, Mr. Mattson's signature does not appear on the pages of the agreement provided, but perhaps was on the missing "counter-offer" documentation.

In addition, there are some disputes surrounding when the Earnest Money Agreement was produced during discovery and by whom it was produced. ProMax claims that the Mattsons did not produce the agreement. The Mattsons' counsel claims the Mattsons lost their copy of the agreement; that ProMax had the Earnest Money Agreement in its possession; and that ProMax actually produced it during discovery.

Moreover, the trial court did not err by basing the figure in part on Mr. Mattson's estimation of the home's value. Generally, a knowledgeable owner may testify as to the market value of property. *See Utah State Road Comm'n v. Johnson*, 550 P.2d 216, 217–18 (Utah 1976). In this case, the trial court specifically found that Mr. Mattson was involved with the home's construction. Thus, Mr. Mattson was not merely a novice homeowner, but was qualified to give his opinion as to his home's value. *Cf. id.* at 218 (noting that homeowner not presumed knowledgeable by ownership alone). Further, the trial court was free to find Mr. Mattson's testimony credible.

### v. Type of Contract

ProMax contends that the trial court erroneously found that the construction contract between ProMax and the Mattsons was a fixed-price arrangement for $219,200—$190,200 for constructing the home, plus $29,000 for one-half of the lot; ProMax insists that the contract was a cost-plus arrangement. ProMax bases its arguments on two general theories: (1) the assertion that no contractor would ever build "an award-winning" house for only $190,200; and (2) that the trial court misunderstood the testimony presented at trial. These arguments are meritless.

First, ProMax cites no evidence whatsoever that would lead to an irrefutable conclusion that a contractor would never enter into the type of fixed-price agreement at issue here. Second, ProMax's ostensible attempt to "clarify" the evidence supporting its view again amounts to an effort to reargue its position, but does not take into account the evidence which supports the trial court's finding.

Indeed, the trial court found ProMax's evidence presented at trial in this regard to be confusing and contradictory. For that very reason, the trial court found ProMax's evidence not credible, as was its prerogative to do. ProMax may not now reargue a factual position it was given a full and fair opportunity to present at trial.

### vi. Sales Commission

Finally, ProMax notes that an escrow agreement attached to the Earnest Money Agreement provided that the Mattsons pay a $16,950 commission to the sales agent. Thus, ProMax argues the Mattsons' recovery should have been reduced by that amount since they would never have received that money even if the sale had been consummated. However, as with the rest of the Earnest Money Agreement, the state of the record concerning this escrow agreement is ambiguous at best. ProMax cites to no portion of the record indicating the escrow agreement was ever brought to the trial court's attention. Because, as discussed above, competent evidence adequately supports the trial court's dollar figures, we will not disturb the trial court's determinations based on an isolated portion of the record which has speculative probative value and which was not developed at trial.

### E. Cost Overruns/Quantum Meruit

In their cross appeal, the Mattsons argue that the trial court should have included the cost overruns in the amount of damages awarded against ProMax. As noted by the Mattsons, the cost overruns represent the amount they were forced to pay over the price established by the contract, which ProMax breached.

Generally, contract damages are measured by "the lost benefit of the bargain, and accordingly, '[d]amages are properly measured by the amount necessary to place the nonbreaching party in as good a position as if the contract had been performed.'" *Anesthesiologists Assocs. v. St. Benedict's Hosp.*, 852 P.2d 1030, 1036 (Utah.Ct.App. 1993) (quoting *Alexander v. Brown*, 646 P.2d 692, 695 (Utah 1982)), *vacated on other grounds*, 884 P.2d 1236 (Utah 1994); *accord Young Elec. Sign Co. v. United Standard W., Inc.*, 755 P.2d 162, 164 (Utah 1988). ProMax argues, however, that the Mattsons received more than what they bargained for because the home which was ultimately built was worth more than the home which was the subject of the original contract. According to ProMax, the added value is represented by the cost overruns. Thus, ProMax insists

that it has a quantum meruit claim equal to the cost overruns based on the benefit conferred upon the Mattsons above what the original contract contemplated.

Quantum meruit is comprised of two distinct theories: (1) contract implied in law, also known as quasi-contract and (2) contract implied in fact. *See Davies v. Olson,* 746 P.2d 264, 269 (Utah.Ct.App.1987). Under certain circumstances, a breaching party may bring a quantum meruit claim against a non-breaching party. *See Bailey–Allen Co. v. Kurzet,* 876 P.2d 421, 425–26 (Utah.Ct.App. 1994). Neither theory, however, is applicable to this case.

To establish a contract implied in law or a quasi-contract, the plaintiff must show "(1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Davies,* 746 P.2d at 269; *accord Bailey–Allen,* 876 P.2d at 425. To establish a contract implied in fact, the plaintiff must show "(1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation." *Davies,* 746 P.2d at 269.

In this case, the trial court specifically found that ProMax never informed the Mattsons that the home's construction cost was going over budget. Indeed, the trial court found ProMax breached the original contract by failing to inform the Mattsons of the overruns and by causing the Mattsons to pay the cost overruns from their own funds. Thus, the Mattsons could not have known whether ProMax was performing work which exceeded the scope of the original agreement. As such, the second element of a contract implied in law—an appreciation or knowledge by the defendant of the benefit—

is absent because the Mattsons did not know that the home was over budget.

Similarly, the third element of a contract implied in fact—that defendant knew or should have known that the plaintiff expected compensation—is absent. The Mattsons could not reasonably have known that Pro-Max expected additional compensation where ProMax proceeded with the contract without informing the Mattsons of the additional expenditures. Accordingly, neither branch of quantum meruit is established, and the initial contract between the Mattsons and ProMax must stand by its original terms.

The Mattsons are, therefore, entitled to the benefit of their original bargain; that is, they are entitled to pay only the contract price for the home. The trial court found, however, that they ultimately paid $140,000 more than called for under that contract. Thus, the trial court erred in failing to award the Mattsons damages in the amount of $140,000 for the overruns.

### F. Punitive Damages

The Mattsons argue the trial court erred by not awarding punitive damages based on its finding that ProMax acted maliciously.[7] " 'Whether punitive damages [should be] awarded is generally a question of fact within the sound discretion of the [fact finder],' and will not be disturbed absent an abuse of discretion." *Sampson v. Richins,* 770 P.2d 998, 1009 (Utah.Ct.App.1989) (citation omitted). "As a general rule, punitive damages are available where the defendant's conduct was 'wilful and malicious.' " *Nelson v. Jacobsen,* 669 P.2d 1207, 1219 (Utah 1983) (citation omitted).

In *Nelson,* the Utah Supreme Court considered the issue of punitive damages in the context of the tort of alienation of affections. The court noted that willfulness and maliciousness are elements of the alienation of affections tort. *See id.* Thus,

> [t]o avoid a circumstance in which punitive damages are automatically available in ev-

---

7. The Mattsons also assert that the trial court should have awarded them attorney fees. Generally, a prevailing party may not recover attorney fees unless authorized by a statute or contract. *See, e.g., Watkiss & Campbell v. Foa & Son,* 808

P.2d 1061, 1068 (Utah 1991). The Mattsons do not suggest what statute or contract provision would entitle them to attorney fees. Thus, this claim is without merit.

ery such cause of action, ... in order to recover punitive damages for the tort of alienation of affections the plaintiff must show "circumstances of aggravation in addition to the malice implied by law from the conduct of defendant in causing the separation of plaintiff and [his or her spouse] which was necessary to sustain recovery of compensatory damages."

*Id.* (citation omitted).

Similar reasoning applies to the tort of interference with prospective economic relations when a party relies on the "improper purpose" alternative for recovery. Although malice is not an express element of the interference with prospective economic relations tort, the improper purpose alternative for recovery inherently includes malicious intent. *See Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 307 (Utah 1982) (noting commentator's statement that "a purely 'malicious' motive, in the sense of spite and a desire to do harm ... for its own sake, will make the defendant liable for interference with a contract." (quotation marks & citation omitted)). Thus, where a party prevails on an interference with prospective economic relations claim based on the improper purposes alternative of recovery, that party must show additional aggravating circumstances to recover punitive damages.

Whether a person has acted with malice is a question of fact. *See West v. Thomson Newspapers,* 835 P.2d 179, 187–88 (Utah.Ct.App.1992) (noting that judgment as matter of law inappropriate where jury could find as matter of fact that people acted with malice), *vacated on other grounds,* 872 P.2d 999 (Utah 1994). It follows that the degree of malicious behavior is also a question of fact, reviewable for clear error.

The trial court expressly found that this case did not warrant punitive damages, despite its finding that ProMax acted maliciously. The Mattsons cite nothing to refute this finding. Accordingly, we defer to the trial court's judgment in this matter and affirm the trial court's denial of punitive damages.

CONCLUSION

First, because ProMax failed to plead the statute of frauds, the trial court did not err in refusing to consider ProMax's statute of frauds defense. Second, the trial court did not err by refusing to consider new evidence that could have been produced at trial. Third, the trial court did not err in determining that ProMax acted with improper purposes in causing mechanics' liens to be filed against the Mattsons' home because the evidence supports a conclusion that ProMax's actions were predominantly motived by malice. Finally, the trial court did not abuse its discretion by refusing to award punitive damages.

However, the trial court erred in refusing to award the Mattsons damages for the amount they paid over the contract price for their home's construction because they were entitled to the benefit of their bargain. We therefore affirm the trial court's judgment in most respects, but reverse and remand for an entry of an additional judgment in favor of the Mattsons for $140,000.

WILKINS, Associate P.J., and JACKSON, J., concur.