**Anthony BOGAN, Plaintiff–Appellee,**

**v.**

**Kenneth STROUD, Sheila Redd and Dwight Anderson, Defendants–Appellants.**

**No. 90–2734.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1991.

Decided March 18, 1992.

Rehearing and Rehearing In Banc Denied May 12, 1992.

---

**7.** Cervante only points out one inconsistency in Rios' testimony. *See supra* note 3 and accompanying text.

Neil F. Hartigan, Atty. Gen., William K. Kane, Bart T. Murphy, Susan Frederick Rhodes, (argued), Asst. Attys. Gen., Chicago, Ill., for defendants-appellants.

Before COFFEY and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

COFFEY, Circuit Judge.

Plaintiff Anthony Bogan, formerly an inmate at the Stateville Correctional Center ("Stateville")[1], in Joliet, Illinois, brought suit in the district court pursuant to 42 U.S.C. § 1983 against defendants Kenneth Stroud, Sheila Redd, and Dwight Anderson, all Stateville correctional officers, alleging that the three violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by using excessive force against him. Pursuant to 28 U.S.C. § 636(c), the parties agreed that the case would be tried before a United States Magistrate Judge and a jury with appeal directly to the Court of Appeals. After a two day trial, a jury found the three correctional officers liable to Bogan and awarded him punitive—but not compensatory—damages. The defendants appeal from the magistrate judge's denial of their motions for judgment notwithstanding the verdict ("JNOV") and for a new trial. In addition, the defendants argue that there was no evidence presented to support a finding of liability, and seek remittitur of the punitive damages. We affirm.

## I.

Bogan and the defendants engaged in a bloody struggle at Stateville on December 6, 1985. The incident began when Bogan, who was imprisoned for murder, attempted murder, kidnapping, home invasion and robbery, was returning to his cell through an "interlock", a room which serves as a security checkpoint between the cell house and a tunnel leading to other parts of the correctional facility. Redd, the correctional officer posted at the security checkpoint, asked Bogan for his identification card, examined it, and then placed a phone call.

David L. Applegate, David S. Fleming (argued), Schaefer, Rosenwein & Fleming, Sidney J. Lee, Greenberger, Krauss & Tenenbaum, Chicago, Ill., for plaintiff-appellee.

1. By the time of trial, Bogan had been transferred to the Menard Correctional Center.

Defendants Stroud and Anderson appeared a few moments later and entered the interlock. Redd told Stroud that Bogan was carrying money, a violation of prison regulations. Bogan denied it, Redd repeated her charge, and Bogan called her a "lying bitch."

Bogan and the defendants disagree about what happened next. According to Bogan, Stroud hit him two times on the right side of his face with a heavy object (perhaps a radio or a pair of handcuffs, but Bogan was not sure). Bogan responded by pulling out a 14 inch long steel "homemade" knife from his waistband, pushing Stroud back towards a table, and "cut[ting] him". Stroud's wound was a laceration which extended from his forehead, down his nose and through his lip. Bogan claims that after he stabbed Stroud, Anderson hit him twice in the head with a heavy metal ashtray. Bogan says he then dropped the knife and fell to the ground unconscious. When Bogan regained consciousness, he claims that Stroud was on top of him stabbing him with the steel knife while Redd kicked him in the head and yelled for Stroud to kill Bogan and Anderson held him down and hit him with the ashtray. Eventually, the three ceased their attack. The physician who treated Bogan for his injuries testified that Bogan sustained numerous stab wounds he termed "superficial." At trial, Bogan claimed that because of the attack he was required to wear a back brace and take medication for three years, and suffered memory lapses and constant headaches.

The defendants presented a very different account of their encounter with Bogan in the interlock. They claim that Stroud did not strike Bogan when the latter called Redd a "lying bitch." Instead, they claim the struggle began when Bogan responded to the correctional officers' attempt to search him by slashing Stroud's face with his knife. Only then, say the defendants, did Stroud and Anderson begin struggling with Bogan for the knife. At trial, the defendants maintained that Stroud never gained control of the knife during the struggle, that they acted at all times in self-defense, and that Stroud never stabbed Bogan. They contended that Bogan's wounds resulted from the attempt to seize his knife. The correctional officers say the melee ended when they pinned Bogan to the floor and gained control of the knife. On December 7, 1987, Bogan pled guilty in Illinois state court to charges of attempted murder and armed violence for stabbing Stroud. Bogan was sentenced to six years to be served consecutively with his original sentence.

Bogan's amended complaint against the defendants stated a 42 U.S.C. § 1983 claim charging them with using excessive force against him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Bogan sought $50,-000 in compensatory damages and $50,000 in punitive damages from each of the defendants. Defendants moved in the district court for summary judgment, arguing that Bogan's guilty plea in state court collaterally estopped him from bringing his § 1983 claim. The district court ruled that, although the guilty plea established for purposes of the § 1983 litigation that Bogan stabbed Stroud without legal justification, the plea did not preclude him from claiming that the defendants used excessive force both before and after Bogan stabbed Stroud.

The jury found the defendants liable on Bogan's § 1983 claim, awarded zero compensatory damages, and awarded punitive damages in the following amounts: Stroud, $5,000; Redd, $1,000; and Anderson, $1,000. Defendants appeal on numerous grounds.

## II.

█ Defendants' central argument in support of their motions for judgment notwithstanding the verdict and for a new trial is that the jury's award of zero compensatory damages required a finding of no liability and did not permit the awarding of punitive damages. We need not address the merits of this argument because the defendants waived their right to present it on appeal by failing to object to a jury instruction which authorized the verdict.

Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. "Not only must the party object to the jury instruction, its 'objection must be sufficiently detailed to draw the court's attention to the defect [in the jury instruction].'" *Sims v. Mulcahy*, 902 F.2d 524, 535 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990) (quoting *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1295 (7th Cir.1987)).

The magistrate judge in this case gave the following instruction to the jury regarding damages:

Punitive damages may be awarded even if the violation of plaintiff's right resulted in only nominal compensatory damages; *that is, even if Mr. Bogan can show no damages or other injury as a result of the defendant's actions.* If these actions were deliberate, willful, or made with reckless or callous disregard of Mr. Bogan's rights, punitive damages are appropriate.

(emphasis added). This instruction was submitted by plaintiff Bogan (as Plaintiff's instruction No. 15) under the heading "Damages—Punitive and Exemplary". The defendants submitted their own punitive damages instruction (Defendant's Instruction No. 47) which made clear to the jury that it could only award punitive damages to Bogan *in addition* to compensatory damages.

These two rival instructions were the subject of a colloquy before the magistrate judge. Referring to the Plaintiff's Instruction No. 15, the magistrate judge asked "[i]s there any difficulty with that? I understood this would be agreed, is that correct?" Bogan's attorney noted that the instruction was included "[u]nder the Tab Exhibit D in the final pretrial order, which was plaintiff's instructions to which defendants did not object as of that time." The magistrate judge responded, "[w]ell, this

one is in Exhibit D, so I can assume I guess it's unobjected to." The defendant's counsel answered, "I would assume that, Your Honor.... If I could just be directed to which instruction we are referring to, we can resolve it right now." Thereupon, plaintiff's counsel repeated that the instruction was included under the "agreed jury instructions" in the final pretrial order. Defendants' counsel noted that they had their own punitive damages instruction, referring to No. 47. The magistrate judge then stated, "It [Plaintiff's instruction No. 15] looks pretty straightforward.... Well, I will give the plaintiff's instruction. I think it is all right." The defendants' counsel then asked, "[f]or the record you are refusing Defendants' [Instruction No.] 47?" "Yes," responded the magistrate judge. No further discussion of the instruction occurred.

The trial transcript thus makes quite clear that the defendants failed to object, as required by Federal Rule 51, to the jury instruction given by the magistrate judge authorizing the jury to award punitive damages even if Bogan suffered no actual damages. Therefore, any challenge to this instruction is waived on appeal. In their reply brief, the defendants attempt to avoid the effects of this waiver by arguing that they are not objecting,

"to the instructions; it is the jury's failure to follow the instructions which is objectionable. It is the duty of the jury to apply the jury instructions to the facts. ... Here, the jury either failed to follow the instructions or was confused, or both. In such a case, the defendants are entitled to a new trial."

The problem for the defendants is that the jury did follow the magistrate judge's instructions explicitly authorizing them to award punitive damages even if they found that Bogan could show "no damages or other injury [other than the violation of his constitutional rights] as a result of the defendants' actions." That is precisely what the jury did. The defendants correctly point out that the magistrate judge also instructed the jury that it could award punitive damages in addition to compensatory damages. This does not negate the fact

that she also instructed the jury that, under certain circumstances, punitive damages could be awarded even though actual damages were not.

Defendant's failure to object to this instruction is fatal to much of their argument on appeal. In a civil case,

> "each party must live with the legal theory reflected in instructions to which it does not object.... Once the law of this case is settled by failure to object to the instructions, the parties may argue only that the jury did not play its proper part. Because the jury's part is to apply the instructions to the facts, we may scrutinize its conclusions only to find out whether it did so."

*Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir.1985), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986) (citations omitted). Moreover,

> "in civil cases a plain error doctrine is not available to protect parties from erroneous jury instructions to which no objection was made at trial.... [P]arty litigants' failure to object to an instruction given to them for inspection before the instructions are given to the jury precludes them from arguing that the jury's verdict was contrary to the appropriate legal standard."

*Sims*, 902 F.2d at 535–36 (citation omitted).

■ Thus, the magistrate judge's instruction to the jury that it could award punitive damages absent a finding of actual damages became the law of this case. *Id.* at 536. We express no opinion as to the appropriateness of the instructions; the defendants' failure to object precludes us from passing judgment on their substantive merit. Defendants' arguments that the verdict was inconsistent or that an award of zero compensatory damages required a finding of no liability are indirect attacks on the punitive damages instructions given to the jury. *See Will*, 776 F.2d at 675. These arguments have been waived.

## III.

■ Defendants also argue that the magistrate judge erred when she denied their JNOV motion because no evidence was presented to support a finding of liability against them. In reviewing the magistrate judge's denial of the JNOV motion,

> "we must determine *de novo* 'whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed.'"

*Fleming v. County of Kane, State of Illinois*, 898 F.2d 553, 559 (7th Cir.1990) (quoting *Cygnar v. City of Chicago*, 865 F.2d 827, 834 (7th Cir.1989)). "Any conflicts in the evidence must be resolved in favor of the party winning the verdict, and every permissible inference favoring that party must be drawn." *Tennes v. Commonwealth of Massachusetts, Department of Revenue*, 944 F.2d 372, 377 (7th Cir.1991). In making the JNOV determination, this "court will not reweigh or reevaluate the evidence—that task is reserved for the jury as factfinder." *Fleming*, 898 F.2d at 559 (quoting *Siddiqi v. Leak*, 880 F.2d 904, 908 (7th Cir.1989)).

The magistrate judge's instructions to the jury set out clearly the elements Bogan was required to establish to make out his claim that the defendants used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. She instructed the jurors that Bogan must prove each of the following propositions by a preponderance of the evidence:

> "First, that defendants used force upon the plaintiff wantonly or maliciously and sadistically for the very purpose of inflicting or causing harm or injury to the plaintiff rather than in a good faith effort to maintain or restore security or discipline. Second, that plaintiff suffered injury. And third, that the defendants' conduct was a proximate cause of the plaintiff's injury."[2]

---

2. This instruction is not challenged by either party on appeal. We note that the instruction

At trial, Bogan maintained that the defendants used excessive force against him both before and after he attempted to murder Stroud with his knife: when Stroud struck him in the face twice with a heavy object *before* Bogan pulled his knife and when Stroud repeatedly stabbed him while Redd kicked him and Anderson hit him in the head with a heavy metal ash tray *after* he had been disarmed and subdued by the defendants.

Viewing the evidence presented at trial in the light most favorable to Bogan, we believe it was sufficient to support the verdict of liability against the defendants. Repeatedly stabbing, beating and kicking a prisoner who has been disarmed and knocked to the ground does qualify as a use of force "for the very purpose of inflicting or causing harm ... rather than ... a good faith effort to maintain or restore security or discipline." Two witnesses supported Bogan's version of the struggle in the interlock. Willie Lyons, an inmate at Stateville, testified that he saw Stroud stabbing Bogan and Redd kicking him while Bogan lay on the ground. Charles Dunbar, another Stateville inmate, also testified that he saw Stroud stab Bogan. A physician who examined Bogan after the incident confirmed that he sustained numerous stab wounds. Moreover, both Anderson and Redd wrote reports shortly after the incident in which they stated that Stroud stabbed Bogan. At trial, both testified that they had not actually seen Stroud stab Bogan.

Bogan also provided the jury with evidence of a possible motive for the use of excessive force. Part of Bogan's trial theory was that Stroud reacted violently to Bogan calling Redd a "lying bitch" because the two defendants were romantically involved. At trial, Redd testified that she was not living with Stroud at the time of the incident. Stroud also initially denied the two were living together at the time of the incident. However, when confronted with his deposition testimony that he was living with Redd before and for two months following the incident, Stroud admitted his deposition testimony. The jury could have inferred from this testimony that Stroud had a special motive for reacting violently to Bogan's insult of Redd.

It is not the role of an appellate court to reweigh the evidence presented at trial. We are bound by the jury's determination because the evidence, when viewed most favorably to Bogan, was sufficient to support a verdict that the defendants used excessive force against Bogan. Thus, the magistrate judge correctly denied the defendants' JNOV motion.

## IV.

Defendants' final argument is that remittitur of the punitive damages is appropriate. They first argue that the "jury's failure to award actual damages to Bogan in this case should require remittitur of the punitive damages award." We have already determined, however, that arguments premised upon the jury's failure to award compensatory damages were waived by the defendants when they failed to object to the magistrate judge's punitive damages instructions.

We also reject defendants' argument that remittitur is appropriate because the punitive damages award was excessive. The Supreme Court has made clear that a "jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). We must set aside a jury's award of punitive damages when it exceeds what is required to serve the objectives of deterrence and punishment. *DeRance, Inc. v. Paine-Webber, Inc.*, 872 F.2d 1312, 1328 (7th Cir. 1989).

closely tracks the Supreme Court's discussion of the required showings for § 1983 claims of use excessive force in violation of the Eighth Amendment in the prison context. *See Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).

■ The punitive damages award of $5,000 against Stroud and $1,000 each against Anderson and Redd seems to us a reasonable amount given the nature of the violation of Bogan's rights found by the jury. Awards entered in similar cases serve as a guideline for this court in determining whether to order a remittitur. *DeRance*, 872 F.2d at 1329. In *McKinley v. Trattles*, 732 F.2d 1320, 1327 (1984) we set an upper limit of $6,000 in punitive damages in a § 1983 action brought against a prison guard who exceeded the permissible scope of a strip search by performing a body cavity search. The jury determined that the conduct of the defendants in this case was serious enough to warrant punitive damages. We refuse to remit the jury's award of punitive damages.

### V.

For the reasons stated above, the magistrate judge's denial of the defendants' motions for JNOV or a new trial, and the jury's finding of liability and award of punitive damages against the defendants on the § 1983 claim, are AFFIRMED.