FILED
United States Court of Appeals
Tenth Circuit

**January 26, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FARM BUREAU LIFE INSURANCE
CO.; FARM BUREAU MUTUAL
INSURANCE CO.,

    Plaintiffs-Appellees/Cross-
    Appellants,

v.

AMERICAN NATIONAL
INSURANCE CO.; AMERICAN
NATIONAL PROPERTY &
CASUALTY CO.; AMERICAN
NATIONAL GENERAL
INSURANCE; DARRIN IVIE;
KENNETH GALLACHER,

    Defendants-Appellants/Cross-
    Appellees.

Nos. 09-4041, 09-4043, 09-4044,
09-4045
(D.C. No. 2:03-CV-00646-TC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

Defendants-Appellants American National Insurance Company, American

---

[*]    This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

National General Insurance, American National Property & Casualty Company,

Darrin Ivie, and Kenneth Gallacher (collectively, "American National")[1] appeal

from the district court's order denying their motions for judgment as a matter of

law and a new trial, arguing that the court's compensatory damages award was

excessive and that the evidence adduced at trial cannot support a punitive

damages award. American National also contends that the district court erred in

partially denying its motion for remittitur and in refusing to reduce the jury's

compensatory damages award. Plaintiffs-Appellees Farm Bureau Life Insurance

Company and Farm Bureau Mutual Insurance Company (collectively, "Farm

Bureau") have filed a cross-appeal, arguing that the district court erred in

remitting the jury's punitive damages award. For the reasons set forth below, we

reverse the district court's order as to punitive damages, vacate its punitive

damages award, and affirm the district court's order as to compensatory damages.

## BACKGROUND

Defendant-Appellant Darrin Ivie worked for Farm Bureau from 1987

through February 2003. Beginning in July 1988, Mr. Ivie served as an Agency

District Manager for Farm Bureau's Zion Cove office in southern Utah, where he

---

[1]     Although Mr. Ivie and Mr. Gallacher are individual defendants, we refer to them as part of the "American National" collective. Both Mr. Ivie and Mr. Gallacher served as agents of American National, and they have briefed their arguments jointly with defendant companies American National Insurance Company, American National General Insurance, and American National Property & Casualty Company.

was responsible for recruiting, hiring, training, and supervising insurance agents. In 2001, Mr. Ivie began investigating career opportunities with a rival insurance company, American National, primarily through his communications with Ken Gallacher, a regional director for American National. From October 2002 through his resignation from Farm Bureau on February 28, 2003, Mr. Ivie conspired with Mr. Gallacher to persuade six Farm Bureau agents and three Farm Bureau recruits to leave Farm Bureau for American National. Invoking diversity jurisdiction under 28 U.S.C. § 1332, Farm Bureau then sued Mr. Ivie, Mr. Gallacher, and American National in the United States District Court for the District of Utah, seeking compensatory and punitive damages for alleged violations of Utah state law—specifically, for breach of fiduciary duty and breach of the duty of loyalty, the inducement of those breaches, civil conspiracy, and tortious interference with prospective economic relations.[2]

At trial, in support of its claims, Farm Bureau presented the depositions of American National principals and Farm Bureau agents, as well as abundant evidence of Mr. Ivie's correspondence with Mr. Gallacher. Farm Bureau also offered evidence demonstrating that American National's executive vice president and CEO, Greg Ostergren, aided the implementation of Mr. Ivie's recruiting

---

[2] Farm Bureau's amended complaint asserted numerous claims against Mr. Ivie, Mr. Gallacher, and American National. The district court dismissed many of these claims in its Order and Memorandum Decision partially granting American National's motion for summary judgment; thus, only six causes of action remained at the time of trial.

scheme, along with the testimony of damages expert Richard Hoffman, who estimated that Farm Bureau had suffered approximately $3,793,876 in financial damages due to the loss of these agents and recruits. At the close of Farm Bureau's case, American National moved for judgment as a matter of law on the ground that Farm Bureau had failed to present evidence that could support an award of punitive damages. The district court denied American National's motion, and the jury found all of the defendants liable on Farm Bureau's claims, awarding Farm Bureau $3,606,214 in compensatory damages and $62,722,000 in punitive damages.

American National subsequently filed a renewed motion for judgment as a matter of law or, in the alternative, a new trial, along with a motion for remittitur. The district court disposed of these motions simultaneously in an order filed on February 11, 2009, in which it partially granted American National's motion for remittitur, but denied its motions for judgment as a matter of law and a new trial. Pursuant to that order, the district court reduced the jury's punitive damages award to an amount equal to the compensatory damages—that is, $3,606,214. This appeal followed.

## DISCUSSION

### I.      Punitive Damages

On appeal, American National does not contest the jury's finding of liability. Rather, American National challenges what it deems the court's

"grossly excessive awards of punitive and compensatory damages." Aplt. Opening Br. at 7. First, American National argues that Farm Bureau failed to present evidence that could support *any* award of punitive damages, and asks us to reverse the district court's denial of its motion for judgment as a matter of law and vacate the jury's punitive damages award. Farm Bureau counters on cross-appeal that the district court erred in reducing the jury's punitive damages award below what was constitutionally required and in considering all of the defendants together when it assessed the constitutionality of that award. We conclude that the district court erred in determining that sufficient evidence existed to support the award of punitive damages and vacate the award on that ground; thus, we need not examine the constitutionality of that award.

A.    **Standard of Review**

Whether a punitive damages award is supported by sufficient evidence presents a question of law, which we review de novo. *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004). Though the jury has discretion to determine the amount of this award, its punitive damages award "must be set aside if the court determines that the issue should not have been submitted to the jury in the first place." *Jackson v. Pool Mortg. Co.*, 868 F.2d 1178, 1182 (10th Cir. 1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1072–73; *see also Gleave v. Denver & Rio Grand W. R.R. Co.*, 749 P.2d 660, 670 (Utah Ct. App. 1988) ("If there is no

evidence to justify punitive damages, the issue was properly withheld from the jury."). American National raised this argument in its motion for judgment as a matter of law, which we also review de novo, applying the same standard as the district court. *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1243–44 (10th Cir. 2009). Thus, we view the evidence in the light most favorable to the prevailing party, applying Utah's substantive law and drawing all reasonable inferences in favor of Farm Bureau. *See id.* at 1244; *see also Nieto v. Kapoor*, 268 F.3d 1208, 1221 (10th Cir. 2001). However, we do not weigh the evidence, judge the credibility of witnesses, or challenge the jury's factual conclusions. *Wagner*, 586 F.3d at 1244. "[W]e thus will reverse the district court's denial of the motion for [judgment as a matter of law] 'if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'" *Id.* (quoting *Hardeman*, 377 F.3d at 1112).

### B. Sufficiency of the Evidence

Under Utah law,

> "punitive damages may be awarded only if . . . it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others."

Utah Code Ann. § 78B-8-201(1)(a) (2008); *see Daniels v. Gamma W.*

*Brachytherapy, LLC*, 221 P.3d 256, 268–69 (Utah 2009) (stating that "[w]hether a

claim may be the basis for punitive damages is governed by Utah Code section 78B-8-201"). In applying this statutory standard, Utah courts require plaintiffs to provide evidence that a defendant's conduct went *beyond* the level of scienter that supports a finding of liability—i.e., there must be some "additional aggravating circumstances" that warrant the award of punitive, as opposed to merely compensatory, damages. *Trugreen Cos., L.L.C. v. Scotts Lawn Serv.*, 508 F. Supp. 2d 937, 962 (D. Utah 2007) (refusing to award punitive damages where plaintiff "ha[d] failed to demonstrate additional aggravating circumstances, and the facts of [the] case [were] not so unusual or outrageous as to justify punitive damages"); *see also Nelson v. Jacobsen*, 669 P.2d 1207, 1219 (Utah 1983) ("To avoid a circumstance in which punitive damages are automatically available in every such cause of action, . . . in order to recover punitive damages for the tort of alienation of affections the plaintiff must show 'circumstances of aggravation in addition to the malice implied by law from the conduct of [the] defendant . . . .'" (quoting *Heist v. Heist*, 265 S.E.2d 434, 438 (N.C. Ct. App. 1980))); *Promax Dev. Corp. v. Mattson*, 943 P.2d 247, 259–60 (Utah Ct. App. 1997) (same); *Mark VII Fin. Consultants Corp. v. Smedley*, 792 P.2d 130, 134 n.4 (Utah Ct. App. 1990) ("A wrongful act is not in and of itself a sufficient basis to award punitive damages." (alteration omitted) (quoting *Amoss v. Broadbent*, 514 P.2d 1284, 1287 (Utah 1973)) (internal quotation marks omitted)). To properly prevail on its punitive damages claim, therefore, Farm Bureau needed to provide "clear and

convincing evidence" that American National's conduct went beyond the level of culpability sufficient to sustain a finding of liability on Farm Bureau's breach of fiduciary duty, breach of the duty of loyalty, inducement of the breach of those duties, civil conspiracy, and interference with economic relations claims. In determining whether Farm Bureau has met this burden, we remain mindful that "[p]unitive damages constitute an extraordinary remedy" that "should be applied with caution," *First Sec. Bank of Utah, N.A. v. J.B.J. Feedyards, Inc.*, 653 P.2d 591, 598 (Utah 1982) (quoting *Kesler v. Rogers*, 542 P.2d 354, 359 (Utah 1975)) (internal quotation marks omitted), and are therefore "only appropriate in exceptional cases," *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1112 (Utah 1985).

### 1. Additional Aggravating Circumstances

Farm Bureau failed to present any evidence at trial of "additional aggravating circumstances" that entitled it to punitive damages. When American National first moved for judgment as a matter of law at the close of Farm Bureau's case, Farm Bureau insisted that American National's "reckless disregard" for the rights of Farm Bureau was evinced by its "scorched earth takeover" of the company that "le[ft] no remains behind." R., Vol. 10, Tr. at 2620 (Jury Trial, dated Aug. 4, 2008). Despite the district court's skepticism that punitive damages could be awarded where the court was "truly . . . not seeing" evidence of American National's "willful and malicious" conduct, the court

summarily denied American National's motion. *Id.* at 2618–23. Nowhere in the record, however, did the court consider whether this alleged "scorched earth takeover" constituted an "additional aggravating circumstance." Even if the court had, as we see it, the evidence produced at trial reveals that Farm Bureau's statement was an exaggeration. Of the twelve agents employed at Farm Bureau's Zion Cove office at the time that Mr. Ivie initiated his recruiting scheme, only six left the agency for American National. Although this is certainly a significant percentage, the recruiting scheme hardly qualifies as a "scorched earth takeover" that "le[ft] no remains behind"; in fact, Farm Bureau replaced these agents within two years, and the agency continued to earn profits from 2003 up through the date of trial.

Moreover, when American National renewed its motion for judgment as a matter of law post-trial, Farm Bureau insisted that the conduct that resulted in liability "in and of itself [was] sufficient to support a punitive damages award against each of the [d]efendants." R., Vol. 4, at 896 (Pls.' Mem. in Opp'n to Defs.' Mot. for New Trial or J. as a Matter of Law, filed Nov. 10, 2008). This demonstrates not only that Farm Bureau failed to articulate "circumstances of aggravation" beyond the facts that support a finding of liability, but that it fundamentally misunderstood its obligation to do so under Utah law.[3] *See Nelson,*

---

[3]   Farm Bureau cites *Burton Lumber & Hardware Co. v. Graham*, 186 P.3d 1012 (Utah Ct. App. 2008), for the proposition that "[t]he breach of
(continued...)

669 P.2d at 1219; *Promax*, 943 P.2d at 259–60.

In response to American National's renewed motion, and at oral argument before this court, Farm Bureau made a futile attempt to meet its burden by arguing that American National's conduct was particularly egregious because it involved high-ranking members of the company. The record does indicate that members at the top of the American National hierarchy were involved in Mr. Ivie's scheme to lure agents away from Farm Bureau. Greg Ostergren, executive vice president of American National Insurance Company, and chairman, president, and CEO of American National Property & Casualty Insurance

---

[3](...continued)
fiduciary duties and the aiding thereof justifies a punitive damages award." Aplee. Br. at 21. *Burton*, however, in no way indicates that the breach of a defendant's fiduciary duty, without more, can support an award of punitive damages. In *Burton*, the Utah Court of Appeals upheld the trial court's punitive damages award in part because the defendant owed a fiduciary duty to plaintiff Burton Lumber & Hardware Company as the general manager of one of the company's plants. *Burton*, 186 P.3d at 1021. Burton Lumber's claim, however, was for conversion, not for breach of fiduciary duty; thus, the fact that the defendant owed a fiduciary duty to Burton Lumber served as *additional* evidence of the defendant's egregious conduct and weighed in favor of awarding punitive damages. *See id*. Here, in contrast, the fact that Mr. Ivie breached his fiduciary duty to Farm Bureau cannot constitute an additional aggravating circumstance where the claim itself is that Mr. Ivie breached that fiduciary duty. Furthermore, *Burton* considered the *amount* of the trial court's punitive damages award, not whether punitive damages could be awarded in the first place. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 807 (Utah 1991) ("[T]he question of punitive damages requires that the trial court engage in a two-part inquiry: (i) whether punitives are appropriate at all, i.e., whether the evidence is sufficient to support a lawful jury finding of defendant's requisite mental state, and (ii) whether the amount of punitives is excessive or inadequate . . . ." (footnote omitted) (citations omitted)).

Company, approved the appointment of Robert and Don Wells, two of the Farm Bureau agents, and granted Don Wells certain exceptions to expedite his background check prior to his employment at American National. At least one American National manager expressed his concern to Mr. Ostergren that the recruitment of such a large volume of Farm Bureau agents might "trigger[] an alarm and invite a lawsuit," but Mr. Ostergren offered his assurances that he "[should not] worry" because "[t]here [would] be plenty for everybody." R., Vol. 9, at 2412 (Dep. of Byron Howard). However, Farm Bureau cites no cases, and we have found none, in which a plaintiff satisfied his burden of presenting evidence of a defendant company's "willful and malicious," "intentionally fraudulent," or "knowing and reckless[ly] indifferen[t]" conduct, Utah Code Ann. § 78B-8-201(1)(a), solely by demonstrating that high-ranking members of that company were involved in that conduct.[4] Furthermore, even if the actions of company executives can support a punitive damages award, they cannot do so in

_____

[4] Farm Bureau points out that this court upheld the district court's punitive damages award in *Capstick v. Allstate Ins. Co.*, 998 F.2d 810 (10th Cir. 1993), where "[t]he highest ranking company representative in the courtroom" testified that the company had not engaged in wrongdoing, and would continue to operate in a similar manner. *Id.* at 823. *Capstick*, however, considered whether the *amount* of the punitive damages award was reasonable, not whether the plaintiff had presented sufficient evidence that he was entitled to punitive damages in the first place. *See id.* As these are distinct inquiries, *Capstick* is largely inapplicable and, even if it applied, the fact that the highest-ranking company representative's conduct supported the amount of the punitive damages award in that case does not mean that the involvement of high-ranking company officials universally constitutes an "additional aggravating circumstance." *See Crookston*, 817 P.2d at 807; *Promax*, 943 P.2d at 259–60.

-11-

this case. Mr. Ostergren's conduct, while reprehensible, was the very same conduct that supported the jury's finding of liability, and the very same conduct that the district court relied upon in upholding the jury's *compensatory* damages award. Farm Bureau itself relied heavily upon Mr. Ostergren's involvement in the plan as evidence that American National was liable for the loss of Farm Bureau agents. *See* R., Vol. 4, at 873 ("One of the most telling pieces of evidence showing the plan and how it was effectuated by the [d]efendants is the January 22, 2003, e[-]mail[,] wherein Mr. Ostergren approved an exception for Don Wells . . . ."). Mr. Ostergren's complicity with Mr. Ivie's recruitment scheme, therefore, does not constitute an "aggravating" circumstance *in addition to* the conduct necessary to sustain recovery of compensatory damages. *See Nelson*, 669 P.2d at 1219; *Promax,* 943 P.2d at 259–60.

Farm Bureau's argument that punitive damages are warranted because American National attempted to cover up its misconduct after it recruited the Farm Bureau agents is equally unpersuasive. The evidence produced at trial did indicate that three Farm Bureau Agents—Mr. Ivie, Robert Wells, and Don Wells—completed applications to work at American National in 2002, then completed a second set of applications a few days after they left Farm Bureau in February 2003. Farm Bureau's theory that American National completed this second set of applications to create the appearance that the agents only applied to work at American National after they had left Farm Bureau is certainly plausible.

-12-

Under Utah law, however, while a defendant's after-the-fact conduct may be probative of his state of mind at the time of the underlying misconduct, it cannot itself support a punitive damages award. *See DeBry v. Cascade Enters.*, 879 P.2d 1353, 1359 (Utah 1994) ("A punitive damage award is an additional remedy for the violation of a legal duty *giving rise to a cause of action* based on that violation." (emphasis added)); *see also Juarez v. ACS Gov't Solutions Grp.*, 314 F.3d 1243, 1247 (10th Cir. 2003) (Noting that a "cover-up after the fact does not necessarily import previous evil intent"); *cf. Smith v. Fairfax Realty, Inc.*, 82 P.3d 1064, 1074 (Utah 2003) (finding that a defendant corporation's "self-interested actions, made in the face of known fiduciary obligations, support[ed] a substantial punitive damage award" where it commingled funds, paid inflated management fees to its subsidiary, and committed other egregious acts *at the time* that it breached partnership agreements, breached its fiduciary duty, and converted partnership assets).

Mr. Ivie breached his fiduciary duty to Farm Bureau when he recruited agents for American National while he was still employed by Farm Bureau; thus, the only relevant inquiry is whether Mr. Ivie's actions were "the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifest[ed] a knowing and reckless indifference toward, and a disregard of, the rights of [Farm Bureau]" *at that time*. *See* Utah Code Ann. § 78B-8-201(1)(a). Had Farm Bureau presented clear and convincing evidence that Mr. Ivie planned a cover-up at the

same time that he breached his fiduciary duty to Farm Bureau by recruiting for American National, this might have constituted an "additional aggravating circumstance." *Cf. Juarez*, 314 F.3d at 1247 (upholding the jury's award of punitive damages where the plaintiff presented sufficient evidence from which "the jury could infer that the cover-up was planned *prior to* the discriminatory discharge" upon which the defendant's liability was premised (emphasis added)); *Leavey v. UNUM/Provident Corp.*, No. CV-02-2281-PHX-SMM, 2006 U.S. Dist. LEXIS 34810, at \*21 n.1 (D. Ariz. May 26, 2006) (concluding that evidence of defendants' "cover-up" could support a punitive damages award where defendants' "efforts to conceal their actions occurred *in tandem* with the [underlying] conduct" for which defendants were liable (emphasis added)). Instead, Farm Bureau itself asserts that, as early as October 28, 2002, Mr. Ivie boasted in an e-mail about his "ability to hire all the possible [Farm Bureau agents] without having to worry about boundaries." Aplee. Br. at 6 (emphasis omitted) (quoting R., Vol. 15, at 3880 (Pls.' Ex. 44)). However, the second set of applications were not completed until after February 14, 2003. It appears, therefore, that American National's "cover-up" was just that; an attempt by Mr. Ivie to cover his tracks *after* he had initiated his recruiting scheme, and the jury had no reason to infer otherwise.[5] *See Juarez*, 314 F.3d at 1247. As such, the

_____

[5] Farm Bureau also argued in its response to American National's renewed motion for judgment as a matter of law that "[a] very clear example of
(continued...)

-14-

alleged cover-up does not amount to an "additional aggravating circumstance" that can support a punitive damages award.

## 2. Litigation-Related Conduct

Additionally, Farm Bureau argues that an award of punitive damages is "certainly proper given the conduct, the testimony[,] and the attitude of the [d]efendants throughout [the] litigation." R., Vol. 4, at 899. The district court appears to have endorsed this view in its Order and Memorandum Decision denying American National's motion, in which it noted that the jury could have awarded punitive damages because "Mr. Ivie and Mr. Gallacher were not telling the truth on the stand," and the jurors were "offended by the attempts of Mr. Ivie and Mr. Gallacher to explain the stark differences between their testimony and the documents" that Farm Bureau produced at trial. *Id.* at 1072.

A defendant's conduct at trial may be considered in assessing the *amount* of a punitive damages award under Utah law. *See Diversified Holdings, L.C. v.*

---

[5](...continued)
the cover-up can be seen in Mr. Gallacher's November 15, 2002 e-mail response to Mr. Whisenant." R., Vol. 4, at 898. On November 15, Kevin Whisenant, a Farm Bureau agent, sent an e-mail to Mr. Gallacher in which he congratulated him on his recruitment of other Farm Bureau agents and added: "[i]n talking with Darrin Ivie, it sounds like you want to talk with the rest of us." R., Vol. 15, at 3882. Mr. Gallacher responded that he "ha[d] no reason to believe that [Mr. Whisenant was] looking to change insurance carriers," but that American National was indeed seeking to expand. *Id.* at 3883. Mr. Gallacher's response can hardly be construed as a "clear example" of a cover-up. And, even if it could be, it is not probative of Mr. Ivie's state of mind at the time that he breached his fiduciary duty to Farm Bureau, nor does it evince a plan between Mr. Gallacher and Mr. Ivie to conceal their actions.

*Turner*, 63 P.3d 686, 695–96 (Utah 2002); *Campbell v. State Farm Mut. Auto. Ins. Co.*, 65 P.3d 1134, 1148 (Utah 2001), *overruled on other grounds by* 538 U.S. 408 (2003). However, a defendant's subsequent conduct at trial cannot serve as the basis for the award of punitive damages in the first place. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003) ("[D]issimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."); *DeBry*, 879 P.2d at 1359 (noting that punitive damages are an "additional remedy" for the underlying violation of a legal duty); *supra* Part I.B.1 (discussing the premise that a defendant's after-the-fact conduct cannot support a punitive damages award); *accord De Anza Santa Cruz Mobile Estates Homeowners Ass'n v. De Anza Santa Cruz Mobile Estates*, 114 Cal. Rptr. 2d 708, 730 (Cal. Ct. App. 2001) ("[A] defendant's trial tactics and litigation conduct may not be used to impose punitive damages in a tort action."); *Chavarria v. Fleetwood Retail Corp.*, 115 P.3d 799, 812 (N.M. Ct. App. 2005) (reversing the trial court's award of punitive damages based on insufficiency of the evidence where "the trial court [erroneously] relied on Defendant's litigation conduct or defense of [the] lawsuit"); *cf. Bosack v. Soward*, Nos. C07-574Z & C07-16637, 2008 U.S. Dist. LEXIS 30532, at *32 (W.D. Wash. Feb. 25, 2008) (upholding an arbitration

-16-

panel's punitive damages award where that award was not "improperly [imposed] . . . to punish litigation conduct").

Unlike a court's determination regarding the proper *amount* of punitive damages, in which a defendant's actions at trial may call for a high punitive damages award in order to deter *future* misconduct, litigation-related conduct is irrelevant to the threshold determination of whether *any* punitive damages are appropriate—at least absent some showing that the defendant's conduct at trial is probative of his state of mind at the time that the *previous* tortious act was committed. *See O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438, 1449 (10th Cir. 1987) ("Evidence of the parties' conduct subsequent to the event, which produces plaintiff's claim for punitive damages, whether aggravating or mitigating, must be probative of the defendant's state of mind at the time of the transaction." (emphasis omitted) (quoting *Ettus v. Orkin Exterminating Co.*, 665 P.2d 730, 741 (Kan. 1983)) (internal quotation marks omitted)); *cf. Diversified Holdings*, 63 P.3d at 696 (concluding that defendant's "incredibly arrogant and uncaring attitude on the stand," and failure to attend the trial during presentation of evidence or argument related to the amount of punitive damages, warranted "concern[] that a smaller [punitive damages] award would not penalize [the defendant] sufficiently to deter him from repetition of his conduct"). Having reviewed the record, it is clear that Farm Bureau made no such showing, and we therefore conclude that the district court erred in suggesting that American

-17-

National's conduct at trial could serve as the basis for the jury's punitive damages award. In sum, for all of the foregoing reasons, the district court's punitive damages award cannot stand.

## II. Compensatory Damages

American National challenged the jury's compensatory damages award in its post-trial motions for judgment as a matter of law, for remittitur, and for a new trial. On appeal, American National argues that "[t]here are two basic flaws in Farm Bureau's calculation of compensatory damages": (1) "Farm Bureau replaced all the lost agents within two years, but was awarded lost profits for many years longer," and (2) the award was based on "the assumption that, but for American National's conduct, Farm Bureau would have continued to earn profits attributable to all six agents and all three recruits until each one had worked for 11.7 years—the average length of service of a Farm Bureau agent."[6] Aplt. Opening Br. at 35–36. American National contends that any damages with regard to these employees are "simply too speculative because at-will employees are free to leave at any time." *Id.* at 37. It asserts that both of these arguments are "based on rules of law" and present "purely legal arguments" that warrant de novo review. Aplt. Reply Br. at 11–13. Farm Bureau counters that American National has waived these arguments because (1) it failed to move for judgment as a matter

---

[6] American National's argument is somewhat misleading, as Mr. Hoffman's testimony was based upon an average length of service of 11.5 years, not 11.7 years. *See* R., Vol. 9, at 2332.

of law under Federal Rule of Civil Procedure 50(a) on the compensatory damages issue at trial, and (2) American National failed to seek jury instructions advancing these legal theories.

### A.    Waiver of Farm Bureau's Rule 50(a) Waiver Argument

The plain language of Federal Rule of Civil Procedure 50(b) provides that a court may order a new trial only where it has declined to "grant a [previously filed] motion for judgment as a matter of law made under Rule 50(a)," and Farm Bureau correctly recites this court's holding that "[a] party may not circumvent Rule 50(a) by raising for the first time in a post-trial motion issues not raised in an earlier motion" for judgment as a matter of law.  *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000); *see* Fed. R. Civ. P. 50(a)–(b).  We have also held, however, that "where a party did not object to a movant's Rule 50(b) motion specifically on the grounds that the issue was waived by an inadequate Rule 50(a) motion, the party's right to object on that basis is itself waived."  *Elliot v. Turner Constr. Co.*, 381 F.3d 995, 1006 (10th Cir. 2004) (alteration omitted) (quoting *Williams v. Runyon*, 130 F.3d 568, 572 (3d Cir. 1997)) (internal quotation marks omitted); *see also Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 739 (10th Cir. 2007) ("[Plaintiff's] failure to challenge the Rule 50(b) motion in his brief specifically on the grounds that the issue was waived by an inadequate Rule 50(a) motion results in a waiver of the issue.").  Thus, a party waives its Rule 50(a) waiver argument where it fails to

preserve that argument by objecting to his opponent's Rule 50(b) motion on that basis.

Farm Bureau opposed American National's post-trial Rule 50(b) motion in its Memorandum in Opposition to Defendants' Motion for New Trial or Judgment as a Matter of Law, in which it argued generally that the evidence produced at trial was sufficient to support the jury's compensatory damages award and sufficient to establish that "the agent recruits becoming affiliated with American National was part of the Defendants' plan and was the direct result of Defendants' actions." R., Vol. 4, at 888. Nowhere in that memorandum, however, did Farm Bureau object to American National's motion for judgment as a matter of law on the ground that American National neglected to file the prerequisite motion under Rule 50(a). Having failed to do so, Farm Bureau has waived its right to present this argument on appeal. *See Elliot*, 381 F.3d at 1006.

**B.      Failure to Object to Jury Instructions**

"In a civil case[,] each party must live with the legal theory reflected in [the jury] instructions to which it does not object." *Black v. M & W Gear Co.*, 269 F.3d 1220, 1232 (10th Cir. 2001) (quoting *Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1054 (10th Cir. 1988)) (internal quotation marks omitted). Thus, a party waives its right to present a legal argument on appeal "by failing to object to [the] jury instruction[s] which authorized the verdict." *Bogan v. Stroud*, 958 F.2d 180, 182 (7th Cir. 1992) ("Defendants' arguments that the

verdict was inconsistent or that an award of zero compensatory damages required a finding of no liability are indirect attacks on the punitive damages instructions given to the jury. These arguments have been waived." (citation omitted)); *see also Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1176 (10th Cir. 1981) (concluding that the defendant waived its objection to jury instructions on appeal where it failed to object to those instructions at trial).

At no point did American National object when the district court instructed the jury on the issue of lost profits.[7] Thus, having not objected to the district court's compensatory damages instructions, American National has waived its right to raise these legal challenges to the jury's compensatory damages award on appeal. *See Bogan*, 958 F.2d at 182; *Malandris*, 703 F.2d at 1176.

Furthermore, American National's legal challenges are barred by the invited-error doctrine, which "precludes a party from arguing that the district

---

[7] American National did object to Farm Bureau's *proposed* jury instructions. At no point in its memorandum in objection, however, did American National raise the challenges to the lost-profits calculation that it now presents on appeal. Rather, American National objected on the grounds that their own "introductory damages instruction [was] more thorough," that "there [was] no reason to split . . . the damages instruction for the breach of duty claims and the tortious interference claims," that "the jury should not be instructed on general damages . . . where such damages are not recoverable," and that damages related to reductions in salary were not recoverable under Utah law. Dist. Ct. Doc. 453 at 24–26 (Defs.' Objections to Pls.' Proposed Jury Instructions, filed July 2, 2008). Although American National appears to have objected to Farm Bureau's proposed instruction on damages for "interference," which included a discussion of lost-profit calculation, it did not object to the lost-profit calculation language in that instruction, and its proposed alternative instructions contained no discussion of lost profits.

court erred in adopting a proposition that the party had urged the district court to adopt." *United States v. Fields*, 516 F.3d 923, 939 (10th Cir. 2008) (quoting *United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005)) (internal quotation marks omitted). Nowhere in its own proposed jury instructions did American National purport to assert either that (1) damages for lost profits beyond the two-year period between the time that the agents left Farm Bureau and the time that Farm Bureau hired an equal number of new agents were speculative and therefore unwarranted; or (2) damages based upon an average length of service for at-will Farm Bureau employees were inherently speculative. Instead, American National requested a general instruction as to compensatory damages, which directed the jury that

> [d]amages, if any, should be restricted to such losses, if any, as are proved by facts . . . . The general rule on the subject of damages is that all damages resulting necessarily, immediately, and directly from the precise wrong are recoverable, and not those that are contingent and uncertain or mere speculation.

Dist. Ct. Doc. 384 at 48 (Defs.' Proposed Jury Instructions, filed Oct. 15, 2007). The district court adopted that instruction verbatim, and the jury was instructed accordingly. Thus, American National cannot now argue that the jury's compensatory damages award was erroneous as a matter of law, where that award was based entirely on American National's own jury instruction. *See Fields*, 516 F.3d at 939; *see also United States v. Visinaiz*, 428 F.3d 1300, 1311 (10th Cir. 2005) (holding that defense counsel's challenge to the district court's jury

-22-

instructions on appeal "is precluded as invited error" where counsel approved the instruction at trial).

C.    **Alternative Sufficiency-of-the-Evidence Review of American National's Waived Legal Claims**

Because American National has waived its legal challenges to the jury's compensatory damages award, we may set aside the jury's compensatory damages award "only if no reasonable juror could have found the evidence sufficient under the instructions it heard." *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir. 1985) ("Although part of [the defendant's] argument now may be construed as a claim that the jury could not award . . . [arbitration] costs as elements of damages," the defendant "did not propose an instruction excluding these costs from consideration. [Federal Rule of Civil Procedure 51] requires us to assume that the instructions given were correct."); *see also United States v. Atkinson*, 297 U.S. 157, 159 (1936) ("The government failed to question the correctness of [the] instructions either by exception or request to charge . . . . The verdict of a jury will not ordinarily be set aside for error not brought to the attention of the trial court."); *Malandris,* 703 F.2d at 1176 n.20 (finding that any error in submitting a negligent hiring theory to the jury "should not . . . be considered on appeal" where the defendant failed to object to the jury instruction at trial or on appeal, and the instruction given at trial was similar to one of defendant's proposed instructions). In other words, we will sustain the jury's

-23-

damages award where it is supported by "sufficient evidence." *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996) ("In the ordinary case, pursuant to Fed. R. Civ. P. 51, when a party fails to object to a jury instruction," a general jury verdict is upheld "where there is substantial evidence supporting any ground of recovery in favor of an appellee." (quoting *Union Pac. R.R. Co. v. Lumbert*, 410 F.2d 669, 701 (10th Cir. 1968)) (internal quotation marks omitted)). We therefore view American National's legal challenges as an attack on the sufficiency of the evidence. Such challenges are "normally one[s] of fact and not of law," *Campbell v. Bartlett*, 975 F.2d 1569, 1577 (10th Cir. 1992) (quoting *Locke v. Atchison, Topeka & Santa Fe Ry.*, 309 F.2d 811, 817 (10th Cir. 1962)) (internal quotation marks omitted); therefore, we review the district court's refusal to set aside a jury verdict for "a manifest abuse of discretion," *id.* (quoting *Richardson v. City of Albuquerque*, 857 F.2d 727, 730 (10th Cir. 1988)) (internal quotation marks omitted).

Under this deferential standard, American National "carries the heavy burden of demonstrating that the [jury's] verdict was 'clearly, decidedly, or overwhelmingly against the weight of the evidence.'" *Id.* (quoting *Locke*, 309 F.2d at 817). "Under this standard, the jury's award is inviolate unless we find it 'so excessive that it shocks the judicial conscience and raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial.'" *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 766 (10th Cir.

-24-

2009) (quoting *Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1216 (10th Cir. 1998)). American National cannot meet this burden.

First, although American National argues that the jury erred in awarding Farm Bureau lost profits beyond the point in time that it mitigated its losses by hiring an equal number of new agents, the jury's award was far from "excessive" in light of the testimony elicited at trial. Cyrus Winters, vice president of Agency and Administration at Farm Bureau, testified that the Zion Cove office had "unlimited" growth potential and could "easily support more than 20 agents." R., Vol. 9, Tr. at 2306 (Jury Trial, dated Aug. 1, 2008). Therefore, according to Mr. Winters, "in a perfect world," Farm Bureau would have retained the six agents and three recruits that it lost to American National *in addition to* other newly hired agents. *Id.* at 2249. Richard Hoffman, a forensic accountant who specializes in damage calculations and business valuations, then based his compensatory damages estimate on this principle. This testimony provided evidence upon which it was entirely reasonable for the jury to award compensatory damages for lost profits both before *and* after the new agent hires began their work at Farm Bureau.

Second, American National's contention that the jury's compensatory damages award was excessive because it was based upon an average length of

service for at-will employees is equally unpersuasive.[8]  American National takes particular issue with the award of damages as to the three agent recruits, which it argues was based on the "inherently speculative" assumptions that the recruits "(1) would have become Farm Bureau agents," and "(2) would have worked for Farm Bureau for 11.7 years."  Aplt. Opening Br. at 42–43.  The evidence produced at trial, however, suggested that these three agents would have remained with Farm Bureau but for American National's actions.  Mr. Ivie testified that these agents had undergone an extensive interview process over a three-to-six month period, that he had agreed to hire these agents and established their recommended start dates, and that Farm Bureau approved his decision.  Mr. Ivie also admitted that he had listed one of the agents as a Farm Bureau agent in an e-

---

[8] We need not examine American National's contention that Farm Bureau cannot recover lost profits because the nine agents were at-will employees who could have left Farm Bureau at any time, as this is a legal argument that American National waived by failing to pursue district court jury instructions that reflected this legal theory.  *See Bogan*, 958 F.2d at 182; *supra* Part II.B.  We note, however, the unlikelihood that American National could prevail on this theory, even if it had adequately preserved the issue by seeking appropriate jury instructions.  First, as American National openly acknowledges, it failed to assert that this argument applies to the six agents who left Farm Bureau, and not merely to the three agent recruits, in its proceedings before the district court.  Thus, to the extent that American National could raise this argument on appeal, it could do so only with regard to the three agent recruits.  *See* Aplt. Opening Br. at 50; *see also, e.g.*, *United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007) ("[A] litigant's failure to raise an argument before the district court generally results in forfeiture on appeal.").  Second, even assuming that we allowed American National to proceed with this argument as it relates to the three recruits, American National concedes that neither Utah courts nor Utah law prohibit compensatory damages for future earnings for at-will employees.  *See* Aplt. Opening Br. at 43.

mail to Ken Gallacher, that all three agents subsequently became licensed and later began work at American National, and that two were still employed as agents working under him at the time of trial. The jury's award of compensatory damages, therefore, was not based upon the "assumption" that these agents would ultimately work for Farm Bureau, but clear evidence that Farm Bureau would have retained these agents but for American National's conduct.

The evidence produced at trial also allowed the jury to reasonably conclude that these three recruits, as well as the six agents already employed at Farm Bureau, would have remained with Farm Bureau for over eleven years. Mr. Hoffman based his estimate on statistical data demonstrating that agents remain employed at Farm Bureau, on average, for a total of approximately "11 and a half years." R., Vol. 9, at 2332. Mr. Hoffman then deducted the actual number of years that each of the six agents had already worked at Farm Bureau as of 2002; this yielded an average of 8.95 remaining years for these agents. *Id.* at 2329–30, 2336–37. The jury's compensatory damages award was based on Mr. Hoffman's statistically supported averages.

Moreover, the fact that the jury relied upon this average even where one agent's illness shortened his term of service does not render its verdict unreasonable. As Mr. Hoffman explained at trial, his calculations were based upon "average profitability"; thus, those calculations explicitly accounted for the fact that "some [agents] are going to leave early, some are going to leave late."

*Id.* at 2328. One agent's need to "leave early" on account of illness, therefore, would be counterbalanced by the potential that another agent would "leave late"—i.e., remain employed at Farm Bureau longer than the approximate 11.5-year average. Because Mr. Hoffman's averages already reflected this likelihood, the jury did not need to reduce its compensatory damages award on account of one agent's illness.[9] The district court did not abuse its discretion in upholding that award.

In sum, we conclude that the jury's compensatory damages award was not "clearly, decidedly, or overwhelmingly against the weight of the evidence"—in fact, its award closely reflected the evidence adduced at trial. On the basis of Mr. Hoffman's testimony, the jury could have reasonably concluded that Farm Bureau was entitled to recover lost profits for the years before and after it replaced its agents, and that those agents and the three recruits would have remained at Farm Bureau for a total of over eleven years but for American National's actions. The jury's decision to award Farm Bureau a total of $3,606,214 in compensatory

---

[9] Although the jury need not have reduced its damages award to account for the one Farm Bureau agent's illness, it actually may have done so. As the district court noted in its Order and Memorandum Decision denying American National's motion for judgment as a matter of law or, in the alternative, a new trial, "the jury did not award Farm Bureau the entire amount Mr. Hoffman had testified represented the damages suffered by Farm Bureau." R., Vol. 4, at 1069. American National itself acknowledges that the jury awarded $111,299 less than the amount of lost profits calculated by Hoffman. *See* Aplt. Opening Br. at 49. This further demonstrates that the jury reasonably considered Mr. Hoffman's expert testimony while accounting for the circumstances surrounding each agent's departure from Farm Bureau.

damages, which was substantially similar to and premised upon Mr. Hoffman's

$3,793,876 estimate, was therefore supported by sufficient evidence.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order as to

punitive damages, **VACATE** the remitted punitive damages award, and **AFFIRM**

the district court's order as to compensatory damages.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge